Don G. ANGELL; D. Gray Angell, Jr. and Don R. House, in their capacities as Co–Trustees of the Don Angell Irrevocable Trust Under Instrument Dated July 24, 1992; and Angell Care Incorporated, Plaintiffs,

v.

Elizabeth B. KELLY, C. Taylor Pickett, Daniel J. Booth, and Ronald L. Lord, Defendants.

No. 1:01 CV 00435.

United States District Court, M.D. North Carolina.

Sept. 17, 2004.

Robert J. Lawing, John N. Taylor, Jr., H. Brent Helms, Robinson & Lawing, Winston–Salem, NC, for Plaintiffs.

James Conrad Adams, II, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, Paul T. Flick, Hope Derby Carmichael, Jordan Price Wall Gray & Jones, L.L.P., Raleigh, NC, for Defendants.

### MEMORANDUM OPINION and ORDER

OSTEEN, District Judge.

Plaintiffs D. Gray Angell, Jr. and Don R. House, in their capacities as co-trustees of the Don Angell Irrevocable Trust, Don G. Angell, and Angell Care Incorporated ("ACI") bring this action against Defendants Elizabeth B. Kelly, C. Taylor Pickett, Daniel J. Booth, and Ronald L. Lord claiming fraudulent conveyance in violation of North Carolina General Statutes § 39–23.1 *et seq.*, unlawful distribution in violation of North Carolina General Statutes §§ 55–8–33 and 55–6–40, and unfair and deceptive trade practices in violation of North Carolina General Statutes § 75–1.1

*et seq.* As an alternative to their unlawful distribution claim, Plaintiffs assert a claim of unauthorized execution against only Defendants Booth and Lord. Plaintiffs also assert common law claims of fraud, negligent misrepresentation, breach of fiduciary duty, and constructive fraud against all Defendants. This matter is now before the court on Defendants Kelly, Pickett, and Booth's motion to dismiss and Defendant Lord's separate motion to dismiss, both made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The following facts are presented in the light most favorable to Plaintiffs.[1]

Defendants are each former officers and directors of Integrated Health Services, Inc. ("IHS") and its subsidiary, Premiere Associates, Inc. ("Premiere"). Prior to IHS's acquisition of Premiere, Premiere had contracted to buy various nursing facilities then owned by Plaintiffs. In consideration for the sale, Premiere executed a series of promissory notes in favor of Plaintiffs; the total value of the notes was $13,958,000.00. The notes were backed by a pledge of all outstanding stock in Premiere and its subsidiaries and by a guaranty agreement executed by Premiere's shareholders. These provisions were set forth in a loan agreement entered into on September 28, 1994. The loan agreement also contained certain covenants that restricted Premiere's ability to transfer its stock absent Plaintiffs' consent.

In February 1998, Premiere entered into a merger agreement with IHS. Pursuant to that agreement, IHS was to purchase all stock in Premiere and its subsidiaries and Premiere would be merged with a wholly-owned subsidiary of IHS. Due to the loan covenants Premiere had entered into with Plaintiffs, Premiere's merger with IHS could not go forward without Plaintiffs' consent.

To that end, Defendants Kelly and Pickett, negotiating on behalf of IHS, sought to secure Plaintiffs' agreement to release Premiere's shareholders from their guaranty agreement, release Plaintiffs' security interests in all of Premiere's stock, and release Premiere from the loan covenants preventing Premiere's merger with the IHS subsidiary. Plaintiffs allege that, to induce their assent to these provisions, Kelly and Pickett represented that the promissory notes Plaintiffs held from Premiere would have priority over all other indebtedness or other obligation of Premiere. Kelly and Pickett assured Plaintiffs that such an agreement was to Plaintiffs' benefit since, following the merger, the promissory notes would be secured by additional assets and Plaintiffs would continue to hold a special priority status among Premiere's creditors. Plaintiffs assented to this agreement (the "Release Agreement") on March 31, 1998, releasing their security interests in exchange for IHS's guarantee of the promissory notes.

Unbeknownst to Plaintiffs, at the time of the Release Agreement, IHS had incurred debt obligations of $2.15 billion stemming from a revolving credit and term loan agreement IHS held with Citibank, N.A. That agreement limited IHS's ability to incur indebtedness or contingent obligations, to make additional acquisitions, to sell or dispose of assets, to create or incur liens, to pay dividends, to purchase or redeem IHS stock, and to merge or consolidate with any person or entity. The revolving credit agreement provided that subsidiaries of IHS, including those

---

**1.** When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994).

subsequently acquired, were required to unconditionally guarantee repayment of the entire $2.15 billion debt, which would be senior to all other indebtedness of IHS and its subsidiaries.

On June 25, 1998, as provided in the merger agreement, Premiere merged with the designated IHS subsidiary. Also on that date, IHS executed a guaranty agreement for Premiere's promissory notes to Plaintiffs. Defendants Kelly, Pickett, and Booth each made various representations in the guaranty agreement, including IHS's unconditional guarantee of the promissory notes Plaintiffs held from Premiere and a provision that this indebtedness would be senior to all other obligations of Premiere.

Shortly after Plaintiffs received the guaranty agreement, on July 22, 1998, Defendant Lord executed a series of joinder agreements on behalf of three Premiere subsidiaries, Health Care Properties III, Inc., Premiere Associates Healthcare Services, Inc., and SHCM Holdings, Inc. Lord also executed joinder agreements on behalf of each subsidiary of these three corporations. The joinder agreements expressly provided that each entity unconditionally guaranteed payment of the $2.15 billion debt of IHS to Citibank. Just over one month later, Defendant Booth executed a similar joinder agreement on behalf of Premiere, providing that Premiere also unconditionally guaranteed the $2.15 billion debt of IHS.

Less than two years after the merger, IHS and all of its subsidiaries, including Premiere, filed a voluntary petition for Chapter 11 bankruptcy reorganization in the United States Bankruptcy Court for the District of Delaware. Plaintiffs assert that, but for the execution of the aforementioned joinder agreements by Booth and Lord, Premiere would be solvent and fully capable of paying the promissory notes held by Plaintiffs. Plaintiffs further allege that Kelly, Pickett, and Booth made certain false or negligent misrepresentations, leading Plaintiffs to believe that their promissory notes would hold special priority status among Premiere's debt obligations. Plaintiffs also claim that Kelly, Pickett, and Booth negligently or purposefully misstated or omitted material facts regarding IHS's debts and Premiere's obligation to guarantee IHS's loan from Citibank. Plaintiffs contend these misrepresentations and omissions induced them to enter into the Release Agreement, which allowed the Premiere merger to go forward, eventually leading to execution of the joinder agreements and Premiere's bankruptcy.

## II. ANALYSIS

### A. Fraudulent Conveyance, Unlawful Distribution, and Unauthorized Execution

■ Plaintiffs urge that the joinder agreements executed by Booth and Lord were fraudulent transfers in violation of North Carolina General Statutes § 39–23.1 and unlawful distributions in violation of North Carolina General Statutes §§ 55–8–33 and 55–6–40, for which all Defendants are liable. As an alternative to their unlawful distribution claim against all Defendants, Plaintiffs assert a claim of unauthorized execution against Booth and Lord, alleging that they acted improperly and without authorization when executing the joinder agreements.

■ Plaintiffs contend that execution of the joinder agreements, which caused Premiere and its subsidiaries to assume IHS's $2.15 billion debt, resulted in Premiere's insolvency and subsequent bankruptcy. It is well-settled, however, that when all creditors of an insolvent or bankrupt corporation share an injury based on a common act, only a receiver or trustee has standing to assert the creditors' collective claim against directors on behalf of the

corporation. *See Underwood v. Stafford,* 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967) (stating that a claim "founded on injuries peculiar or personal to [a creditor], so that any recovery would not pass to the corporation and indirectly to other creditors" would give rise to standing for the individual creditor, while causes of action "based on duties owed to the corporation and not to any particular creditor," such as the duty not to fraudulently transfer assets during insolvency, cannot be maintained by an individual creditor); *see also National Am. Ins. Co. v. Ruppert Landscaping Co.,* 187 F.3d 439, 441 (4th Cir. 1999) (holding that individual creditor lacked standing to assert separate cause of action apart from bankruptcy proceeding because claim was substantially similar to those available to other creditors and "the trustee's role is to bring suits such as these on behalf of all the creditors"); *Bradson Mercantile, Inc. v. Vanderbilt Indus. Mercantile, Inc.,* 883 F.Supp. 37, 54 (W.D.N.C.1995) ("Where the alleged fraud or negligent mismanagement has resulted in loss to the corporation and its creditors generally, the right of action belongs to the corporation and it may be maintained only in the name of the corporation or its receiver if it is insolvent.") (citing *Ford Motor Credit Co. v. Minges,* 473 F.2d 918, 921 (4th Cir.1973)); *Keener Lumber Co. v. Perry,* 149 N.C.App. 19, 25, 560 S.E.2d 817, 820, *disc. rev. denied,* 356 N.C. 164, 568 S.E.2d 196 (2002). Accordingly, if the claims Plaintiffs now seek to advance could also have been pursued by any of Premiere's other creditors, Plaintiffs lack standing because the claims are property of the bankruptcy estate.

Here, execution of the joinder agreements resulted in Premiere's bankruptcy and its inability to pay debt obligations held by Plaintiffs *and* all of Premiere's other creditors. The injury Plaintiffs complain of is shared by all of Premiere's creditors and is not unique to Plaintiffs.

Plaintiffs argue that their "special priority status" among Premiere's creditors gives them a unique injury with regard to Premiere's bankruptcy and, therefore, standing to assert claims separate and apart from Premiere's other creditors. Despite Defendants' representations, however, Plaintiffs did not actually hold such special status; Defendants' false representations in that regard form the basis of Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices. As will be addressed further herein, these representations caused Plaintiffs to execute the Release Agreement and facilitated Premiere's merger and assumption of IHS's debts. In this respect, the facts surrounding Defendants' misrepresentation and the injury Plaintiffs suffered as a result are unique to them amongst the creditors of Premiere.

■ Those unique facts do not, however, form the basis of Plaintiffs' claims for fraudulent conveyance, unlawful distribution, and unauthorized execution. Rather, Booth and Lord's execution of the joinder agreements support these claims. If, as Plaintiffs assert, execution of the joinder agreements was the cause of Premiere's bankruptcy, then that act also supports related claims by any of Premiere's creditors. In North Carolina, corporate officers and directors occupy a fiduciary position with respect to stockholders and creditors, and are thus charged with the preservation and proper distribution of the corporation's assets. *Snyder v. Freeman,* 300 N.C. 204, 216, 266 S.E.2d 593, 601 (1980) (quoting *Underwood,* 270 N.C. at 702, 155 S.E.2d at 212). As a result, any transfer that fraudulently or unlawfully deprives all creditors of their right to an insolvent corporation's assets necessarily gives rise to a cause of action shared by those creditors and not unique to any one of them. The fraudulent conveyance,

unlawful distribution, and unauthorized execution claims Plaintiffs assert could be brought by any one of Premiere's creditors who, like Plaintiffs, were denied timely payment of Premiere's debts when execution of the joinder agreements led to Premiere's insolvency.[2] *Compare Underwood,* 270 N.C. at 703, 155 S.E.2d at 213 (holding that, when a corporate creditor sued officers and directors of the corporate debtor for allegedly defrauding creditors by appropriating assets to themselves, the wrongs alleged were committed against the insolvent corporation and must be brought by a receiver), *with Snyder,* 300 N.C. at 217, 266 S.E.2d at 601–02 (holding that an individual creditor could maintain a claim against corporate directors when violations alleged regarded failure to earmark special trust fund held specifically for plaintiff apart from corporation's assets).

Accordingly, Plaintiffs lack standing to pursue their fraudulent conveyance, unlawful distribution, and unauthorized execution claims which arise from Booth and Lord's execution of the joinder agreements. Defendants' motions to dismiss these claims are, therefore, granted.

B. Fraud, Negligent Misrepresentation, and Unfair and Deceptive Trade Practices

Plaintiffs allege that Defendants fraudulently or negligently misrepresented that Plaintiffs, upon execution of the Release Agreement, would occupy a "special priority status" among Premiere's creditors. Based on these facts, Plaintiffs assert claims of fraud, negligent misrepresentation, and unfair and deceptive trade practices in violation of North Carolina General Statutes § 75–1.1.

Defendants argue that Plaintiffs lack standing and their claims are barred by res judicata because Plaintiffs participated in the earlier bankruptcy case. In the alternative, Defendants contend that Plaintiffs failed to adequately plead these claims. Defendant Lord also asserts in his separate motion that Plaintiffs failed to make any allegation against him regarding fraud, negligent misrepresentation, or unfair and deceptive trade practices. The court will address each argument in turn.

1. Standing

█ Defendants first argue that Plaintiffs lack standing since these causes of action belong to the bankruptcy estate and are therefore property of the trustee. *See, e.g., Hudgins v. Davidson,* 127 B.R. 6, 8 (E.D.Va.1991). As discussed above, Plaintiffs, as individual creditors of Premiere, lack standing to assert claims based on harms that are not "peculiar or personal" to them. *Underwood v. Stafford,* 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967).

---

**2.** The court notes that Plaintiff ACI, as part of a creditors' committee, already asserted claims against Defendants Pickett, Booth, and Lord as part of an adversary proceeding in the Delaware Bankruptcy Court. (Materials Supp. Defs. Kelly, Pickett, and Booth's Mot. Dismiss Ex. B.) Therein, the creditors' committee purportedly acted on behalf of all Premiere creditors in pursuing claims including fraudulent transfer, unlawful distribution, and unauthorized execution. (*Id.*) Although members of a creditors' committee may have standing to assert claims both in that representative capacity and, separately, as individual creditors, *see, e.g., Hudgins v. Davidson,* 127 B.R. 6, 8 (E.D.Va.1991), they must still demonstrate that their individual standing is based on a unique injury distinguishable from that suffered by all creditors generally. *Underwood v. Stafford,* 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967). Plaintiffs have failed in that regard and are thus prevented from preserving these claims as an individual right. Since the court concludes Plaintiffs lack standing to pursue these claims in this case, it will not reach the question of whether res judicata bars these causes of action.

Unlike the fraudulent transfer, unlawful distribution, and unauthorized execution claims that were based on Booth and Lord's execution of the joinder agreement, Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on Defendants' assurances regarding Plaintiffs' status among Premiere's creditors. Those assurances were made directly to Plaintiffs in an effort to induce their execution of the Release Agreement so Premiere's merger with the IHS subsidiary could proceed. This inducement was targeted only at Plaintiffs and affected only promissory notes and other debt-obligations held by Plaintiffs.

Since the alleged misrepresentations and execution of the Release Agreements are factually unique to Plaintiffs as among Premiere's other creditors, Plaintiffs have standing to assert claims based on Defendants' representations. Any injuries stemming from those transactions are peculiar and personal to Plaintiffs and may be pursued separate and apart from claims reserved for the trustee in the bankruptcy proceeding. *See, e.g., Lillian Knitting Mills Co. v. Earle,* 233 N.C. 74, 75, 62 S.E.2d 492, 493 (1950) (holding that, when corporation was placed in receivership, individual creditor could maintain claim alleging fraudulent misrepresentations made directly to that creditor by individual officers and directors, despite defendants' argument that claim belonged to receiver for benefit of all corporate creditors); *see also Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1280 (7th Cir.1989) (holding that the plaintiff suffered direct injury distinct from that of other creditors and had standing to sue outside bankruptcy proceeding even though the plaintiff also suffered derivative injury common to all creditors).

Because Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on dis-tinct conduct and unique injuries apart from other Premiere creditors, Plaintiffs have standing to pursue these claims here. Defendants' motions to dismiss will not be granted on this basis.

### 2. Res Judicata

■ Defendants next assert that these claims are based on the same series of transactions that gave rise to the bankruptcy proceeding and are, therefore, barred by res judicata. As discussed above, the court concludes that Plaintiffs' claims arising from alleged misrepresentations are unique to them and by definition could not have been pursued by the trustee in the bankruptcy court. *See Keener Lumber Co. v. Perry,* 149 N.C.App. 19, 26–27, 560 S.E.2d 817, 822–23, *disc. rev. denied,* 356 N.C. 164, 568 S.E.2d 196 (2002) (holding that a claim based on injuries unique to a creditor, such that recovery would pass directly to that creditor, "belongs to, and is properly maintained by, that particular creditor" rather than the bankruptcy trustee) (citing *Underwood,* 270 N.C. at 703, 155 S.E.2d at 213). Likewise, these claims could not have been pursued by the creditors' committee on which Plaintiff ACI served because, in that context, ACI served in a representative capacity to advance claims shared by all similarly-situated creditors. *See Hudgins,* 127 B.R. at 8 (noting that members of a creditors' committee have standing both in a bankruptcy proceeding and in a separate proceeding, provided the first is based on claims shared by other creditors and the second is based on a unique injury).

The events surrounding the alleged misrepresentations are distinct from the transactions related to execution of the joinder agreements, which formed the basis of an injury shared by numerous creditors. Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on an injury unique to them as among Premi-

ere's creditors, and Plaintiffs did not previously pursue these claims in the bankruptcy proceeding. Since these claims were not pursued in the bankruptcy proceeding, res judicata does not bar Plaintiffs from asserting them here. *See Ashland Oil*, 875 F.2d at 1280 (holding that plaintiffs were not limited only to rights of bankruptcy estate creditors since they suffered direct injury "distinct from that of other creditors" and, therefore, could pursue claims apart from the bankruptcy proceeding).

Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on injuries unique to them as among Premiere's other creditors. Accordingly, these claims are not barred by any res judicata effect of the bankruptcy proceeding and Defendants' motions to dismiss will not be granted on that basis.

### 3. Sufficiency of Pleadings

■ A defendant's motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of pleadings, but does not seek to resolve disputes surrounding the facts. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The pleading must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).

Defendants contend that Plaintiffs have not sufficiently pleaded their claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices. As to the fraud claim, Defendants assert that Plaintiffs' amended complaint fails to provide the particularity required under Federal Rule of Civil Procedure 9(b).

■ Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In North Carolina, the requisite elements of a fraud claim are:

> (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that [thereby] resulted in damage to the injured party.

*Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F.Supp.2d 386, 414 (M.D.N.C.2003) (alteration in original) (quoting *Horack v. Southern Real Estate Co. of Charlotte*, 150 N.C.App. 305, 313, 563 S.E.2d 47, 53 (2002)).

To that end, Plaintiffs have alleged that, in an effort to induce Plaintiffs' execution of the Release Agreement, Kelly and Pickett represented that Plaintiffs' debt obligation would be senior to all other indebtedness of Premiere. (Am.Compl.¶ 14.) This statement and related representations are alleged to have caused Plaintiffs, on March 31, 1998, to enter into the Release Agreement. (*Id.* ¶ 15.) The Release Agreement allowed Premiere to merge with the IHS subsidiary on June 25, 1998, at which time Kelly, Pickett, and Booth are alleged to have made numerous false representations regarding the financial condition of IHS, that company's guarantee of Plaintiffs' debt obligation, and related

statements detailed in Plaintiffs' amended complaint. (*Id.* ¶¶ 19–20, 26(d), (h), (*l*), (m).) These false statements are alleged to have been made knowingly and with the specific intent to induce Plaintiffs' execution of the Release Agreement. (*Id.* ¶¶ 26–27.) Plaintiffs executed the Release Agreement and claim that, in doing so, they reasonably relied on the statements of Kelly, Pickett, and Booth. (*Id.* ¶ 27.) Plaintiffs further claim that their execution of the Release Agreement facilitated Premiere's merger, which ultimately caused Premiere's bankruptcy and Plaintiffs' damages. (*Id.*)

■ Although Rule 9(b) requires that the requisite factual allegations be pleaded with particularity, this mandate "does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular." *Gilbert v. Bagley*, 492 F.Supp. 714, 725 (M.D.N.C. 1980). In keeping with that premise, the Fourth Circuit has held that courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999); *accord Fulk v. Bagley*, 88 F.R.D. 153, 164 (M.D.N.C.1980). Plaintiffs' allegations make clear that they are in possession of a substantial amount of prediscovery evidence. Plaintiffs have also pleaded with sufficient factual specificity to make Defendants aware of the "particular circumstances" for which they will need to prepare a defense. Accordingly, the requirements of Rule 9 have

been satisfied and the court will not dismiss Plaintiffs' fraud claim against Kelly, Pickett, and Booth on this ground.

■ Likewise, Plaintiffs have pleaded sufficiently to give Defendants notice of the circumstances surrounding Plaintiffs' claim of negligent misrepresentation. In North Carolina, "[i]t is well established that 'the tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.'" *Jordan v. Earthgrains Cos.*, 155 N.C.App. 762, 766, 576 S.E.2d 336, 339, *disc. review denied*, 357 N.C. 461, 585 S.E.2d 761 (2003) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)). Plaintiffs allege numerous specific misrepresentations by Kelly, Pickett, and Booth and assert that each failed to exercise reasonable care in making the representations. (Am. Compl.¶¶ 14, 29–30.) Plaintiffs have also alleged that they justifiably relied on these representations and did so to their detriment, since execution of the Release Agreement allowed Premiere to go forward with its merger, eventually leading to its bankruptcy. (*Id.* ¶ 30.)

■ Again, these allegations are sufficient to give Defendants notice of Plaintiffs' claim and the particular facts and circumstances surrounding it. *See Harrison*, 176 F.3d at 784. Because Plaintiffs have adequately pleaded a claim of negligent misrepresentation against Kelly, Pickett, and Booth, the court will deny these Defendants' motion to dismiss this claim.[3]

---

**3.** Defendants argue that the fraud and negligent misrepresentation claims should be dismissed because Plaintiffs have not established that they reasonably relied on Defendants'

representations. *See State Properties, L.L.C. v. Ray*, 155 N.C.App. 65, 72, 574 S.E.2d 180, 186 (2002) (stating that a party's reliance on false statements must be reasonable). Since

■ Finally, by adequately pleading their fraud and negligent misrepresentation claims, Plaintiffs have also pleaded their claim of unfair and deceptive trade practices with sufficient particularity. *See Powell v. Wold*, 88 N.C.App. 61, 68, 362 S.E.2d 796, 800 (1987) ("Because the claims ... based on fraud and negligent misrepresentation have been held ... sustainable past a Rule 12(b)(6) motion to dismiss, the claim of unfair and deceptive trade practices cannot be dismissed. 'Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices.'") (quoting *Webb v. Triad Appraisal & Adjustment Serv., Inc.*, 84 N.C.App. 446, 449, 352 S.E.2d 859, 862 (1987)); *accord Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C.App. 477, 593 S.E.2d 595, 601 (2004). As such, the court will also deny Kelly, Pickett, and Booth's motion to dismiss Plaintiffs' claim for unfair and deceptive trade practices.

#### 4. Defendant Lord

With regard to Defendant Lord, Plaintiffs allege only that he executed some of the joinder agreements that allowed Premiere's merger and later guarantee of IHS's $2.15 billion debt. (Am. Compl.¶¶ 21, 23.) Execution of the joinder agreements does not form the basis of Plaintiffs' claims for fraud, negligent misrepresentation, or unfair and deceptive trade practices. (*Id.* ¶¶ 25–30.) Those claims are based on alleged material misrepresentations and omissions made by Kelly, Pickett, and Booth. Plaintiffs have made no allegation that Lord was involved in any of the representations or omissions that induced Plaintiffs to execute the Release Agreement. Since Plaintiffs have not alleged any fact that would provide a

basis for Lord's liability, Plaintiffs have failed to state a claim upon which relief can be granted for fraud, negligent misrepresentation, and unfair and deceptive trade practices. The court will, therefore, grant Lord's motion to dismiss these claims.

#### C. Breach of Fiduciary Duty and Constructive Fraud

Plaintiffs allege that Defendants, in procuring the Release Agreement, promised to give Plaintiffs' promissory notes priority status over all indebtedness or other obligations of Premiere to IHS. Plaintiffs argue that, if proven, this fact would establish Defendants' fiduciary duty to Plaintiffs, a duty that was breached when Premiere assumed IHS's debt to Citibank, which was an obligation senior to Plaintiffs' promissory notes. Defendants maintain that their relationship to Plaintiffs did not create a fiduciary duty under North Carolina law and, as such, Plaintiffs cannot sustain a claim for breach of fiduciary duty. Absent a fiduciary duty, Defendants contend that Plaintiffs also cannot sustain a claim of constructive fraud. *See, e.g., Keener Lumber Co. v. Perry*, 149 N.C.App. 19, 28, 560 S.E.2d 817, 823 (stating that, to support a constructive fraud claim, "a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty"), *disc. review denied*, 356 N.C. 164, 568 S.E.2d 196 (2002).

■ North Carolina courts are "reluctant" to impose "extra-contractual fiduciary obligations" even though parties to an arms-length transaction may have placed confidence in one another. *South Atl. Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 533 (4th Cir.2002) (citing *Tin Origi-*

---

the reasonableness of Plaintiffs' reliance is typically "a question for the jury, unless the facts are so clear that they support only one conclusion," *see id.* at 73, 574 S.E.2d at 186,

the court will not, at this stage of the proceeding, dismiss Plaintiffs' claims for fraud and negligent misrepresentation on that ground.

*nals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C.App. 663, 666, 391 S.E.2d 831, 833 (1990)). It is also well-settled that a debtor-creditor relationship does not give rise to a fiduciary duty. *Security Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.*, 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965); *In re Gertzman*, 115 N.C.App. 634, 639, 446 S.E.2d 130, 134 (1994); *Branch Banking & Trust Co. v. Thompson*, 107 N.C.App. 53, 61, 418 S.E.2d 694, 699 (1992).

■ Plaintiffs argue that Defendants' fiduciary duty arises from the special creditor status Defendants allegedly extended to them. This argument is in error. Defendants' representation that Plaintiffs occupied a special status among Premiere's creditors forms the basis of Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive practices, but does not create a fiduciary duty to Plaintiffs. Even assuming that Plaintiffs did hold a preferential status among Premiere's creditors, the relationship between Premiere and Plaintiffs was at all times a debtor-creditor relationship and could not, without more, give rise to a fiduciary duty.

■ Furthermore, "[a]s a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation." *Keener*, 149 N.C.App. at 29, 560 S.E.2d at 824 (quoting *Whitley v. Carolina Clinic, Inc.*, 118 N.C.App. 523, 526, 455 S.E.2d 896, 899 (1995)). Such a duty exists only when the corporation is insolvent, "is in declining circumstances and verging on insolvency," or "where such facts establish circumstances that amount 'practically to a dissolution.'" *Id.* at 29–30, 560 S.E.2d at 824–25; *accord Whitley*, 118 N.C.App. at 528, 455 S.E.2d at 900 ("[T]he law of this state, consistent with other authorities, establishes that for a corporate director to breach a fiduciary duty to a creditor, the transaction at issue must occur under circumstances amounting to a 'winding-up' or dissolution of the corporation."). Although Premiere later entered bankruptcy, at the time the Release Agreement was negotiated, Plaintiffs concede that Premiere was solvent. Plaintiffs also admit that Premiere continued to be solvent for almost two years following its merger with the IHS subsidiary and execution of the joinder agreements Plaintiffs blame for Premiere's bankruptcy. Since Premiere was not insolvent, verging on insolvency, or contemplating dissolution when the Release Agreement was negotiated, Defendants, as officers of Premiere, did not owe a fiduciary duty to Plaintiffs.

Since Defendants did not owe any fiduciary duty to Plaintiffs under North Carolina law, Plaintiffs cannot support a claim for breach of that duty or a claim of constructive fraud. Accordingly, Defendants' motions to dismiss both claims are granted.

### D. Punitive Damages

Defendants have moved to dismiss Plaintiffs' claim for punitive damages, arguing that Plaintiffs have failed to adequately plead any actionable wrong by Defendants. Having determined that Plaintiffs properly stated a claim against Defendants Kelly, Pickett, and Booth for fraud, negligent misrepresentation, and unfair and deceptive trade practices, the court declines to bar Plaintiffs from pursuing punitive damages against these Defendants.

### III. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Defendant Lord's Motion to Dismiss Plaintiffs' Amended Complaint [21] is GRANTED in full.

IT IS FURTHER ORDERED that Defendants Kelly, Pickett, and Booth's Motion to Dismiss Plaintiffs' Amended Com-

plaint [23] is GRANTED with respect to Plaintiffs' claims of fraudulent conveyance, unlawful distribution, unauthorized execution, breach of fiduciary duty, and constructive fraud. Kelly, Pickett, and Booth's motion is DENIED with respect to Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices.