NO. COA13-1272

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

SWAN BEACH COROLLA, L.L.C., OCEAN
ASSOCIATES, LP, LITTLE NECK
TOWERS, L.L.C., GERALD FRIEDMAN,
NANCY FRIEDMAN, CHARLES S.
FRIEDMAN, TIL MORNING, LLC, and
SECOND STAR, L.L.C.,
    Plaintiffs,

    v.
                                     Currituck County
                                     No. 12-CVS-334

COUNTY OF CURRITUCK; THE CURRITUCK
COUNTY BOARD OF COMMISSIONERS; and
JOHN D. RORER, MARION GILBERT, O.
VANCE AYDLETT, JR., H.M. PETREY,
J. OWEN ETHERIDGE, PAUL MARTIN,
and S. PAUL O'NEAL as members of
the CURRITUCK COUNTY BOARD OF
COMMISSIONERS,
    Defendants.

Appeal by plaintiffs from Order entered 24 July 2013 by Judge Wayland J. Sermons in Superior Court, Currituck County. Heard in the Court of Appeals 24 April 2014.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Lacy H. Reaves and J. Mitchell Armbruster, for plaintiffs-appellants.*

*County of Currituck, by Donald I. McRee, Jr., for defendants-appellees.*

STROUD, Judge.

Plaintiffs appeal from an order entered 24 July 2013 dismissing their complaint for declaratory judgment regarding vested rights they claimed to develop their property commercially, for violations of constitutional rights under 42 U.S.C. § 1983, and for violation of Article V, Section 2 of the North Carolina Constitution. We reverse in part, affirm in part, and remand for further proceedings.

## I. Background

Plaintiffs are five companies and three individuals who own property in the Swan Beach Subdivision in Currituck County. On 6 July 2012, they filed a complaint against the County of Currituck, the Currituck Board of Commissioners, and the commissioners themselves in their official capacities. Plaintiff Ocean Associates was the original developer of the land and the other plaintiffs purchased their land from it.[1] They alleged that they have common law vested rights to develop commercial uses on their property. They also raised claims of laches, "easement rights" to commercially develop their property, state constitutional violations, and violations of federal equal protection and due process under 42 U.S.C. § 1983.

---

[1] The precise nature of the relationship between Ocean Associates and the other plaintiffs is not clear from the complaint.

According to the complaint, plaintiff Ocean Associates, LP, purchased approximately 1400 acres of property in the Carova Beach area of Currituck County in 1966 to develop a residential subdivision along with related commercial services.[2] In 1969, Ocean Associates created and recorded a plat indicating that it intended to divide the property into residential and business lots. At the time, Currituck County had no applicable zoning ordinance. However, the County asked Ocean Associates to refrain from developing the business lots until the residential lots were sufficiently occupied. After filing the plat, Ocean Associates began to prepare both the residential and business lots for development. They spent $425,050.00 on services such as surveying, land geosciences, general engineering, road grading, canal digging, dune building, filling lots, evacuating ditches, and landscaping. This infrastructure would serve both the business and residential lots.

In 1971, Currituck County adopted a zoning ordinance. The 1971 ordinance designated plaintiffs' property as RA-20. The RA-20 district allowed for low density residential and agricultural uses with only limited business uses. Plaintiffs allege that

---

[2] Because this case comes to us on a motion to dismiss, all of the following facts are from the complaint; we express no opinion as to their veracity.

they did not know that the zoning of their property had changed. In 1975, the County enacted a new zoning ordinance. This ordinance zoned plaintiffs' property in a similar manner to the previous ordinance. Plaintiffs believed that the County would still permit them to develop their property for commercial uses because the County had allowed other property owners to do the same.

In 1989, Currituck County enacted a Unified Development Ordinance (UDO). The UDO zoned plaintiffs' property RO2, which does not allow business uses except for marinas, campgrounds, outdoor recreational facilities, and small professional offices. The business and commercial uses intended by plaintiffs would not be permitted under this ordinance. Nevertheless, plaintiffs continued to believe that they would be allowed to commercially develop their property.

In 2004, plaintiffs decided to move forward with development of the business lots because the density of the residential lots had finally become sufficient to support such use. They wanted to build a convenience store, real estate offices, a post office, and a restaurant. Around September 2004, the County informed plaintiffs that such uses would not be permitted. Plaintiffs asserted that they had vested rights to

use their property in this manner, but the County disagreed, asserting that the UDO barred such uses. Over the next three years, plaintiffs then attempted to convince the County to rezone their property so that they could develop their property for business uses. The parties agreed that such uses would not be permitted on their property under the UDO.

Plaintiffs allege that despite the County's assertion that the UDO prohibits business development in the RO2 district, the County has permitted other businesses to operate in the area. They alleged that the County treated plaintiffs differently without a rational basis, or because the individual plaintiffs are Jewish.

On 12 September 2012, defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Defendants argued that plaintiffs failed to exhaust applicable administrative remedies and that they are protected by sovereign, governmental, and legislative immunity. They further argued that plaintiffs' complaint is barred by the applicable statutes of limitations.

Plaintiffs filed an amended complaint on 13 February 2013. The amended complaint added an allegation that the County adopted a zoning ordinance in 1968, but that there was no map

accompanying the ordinance and that their property was not zoned at that time. The amended complaint also added a claim under Article V, Section 2 of the North Carolina Constitution. Plaintiffs alleged that the County had taxed their property as business property since 1969, so its failure to permit plaintiffs to develop their property for business uses contravenes the requirement of taxation by uniform rule.

Defendants then filed an amended motion to dismiss and an amended brief in support of their motion. The motion was heard by the superior court on 20 May 2013. By order entered 24 July 2013, the superior court allowed defendants' 12(b)(1) motion to dismiss for failure to exhaust administrative remedies and their 12(b)(6) motion for failure to state a claim, though it did not specify a reason. Plaintiffs timely appealed to this Court.

## II. Standard of Review

Defendants moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1)(2011) and for failure to state a claim under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)(2011).

> Rule 12(b)(1) permits a party to contest, by motion, the jurisdiction of the trial court over the subject matter in controversy. We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the

pleadings. Pursuant to the de novo standard of review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court.

*Trivette v. Yount*, ___ N.C. App. ___, ___, 720 S.E.2d 732, 735 (2011) (citations, quotation marks, brackets, and italics omitted).

> The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. On appeal of a 12(b)(6) motion to dismiss, this Court conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.

*Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, ___ N.C. App. ___, ___, 752 S.E.2d 661, 663-64 (2013) (citation and quotation marks omitted).

III. Common Law Vested Rights Claim

Plaintiffs argue that the trial court erred in dismissing their common law vested rights claim under Rule 12(b)(1) for failure to exhaust administrative remedies. Defendants counter that even if it was error to dismiss under Rule 12(b)(1), dismissal was proper under Rule 12(b)(6). We hold that plaintiffs did not fail to exhaust administrative remedies and that their common law vested rights claim was sufficiently pled to survive a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6).

A.   Exhaustion of Administrative Remedies

"As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). "If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed." *Justice for Animals, Inc. v. Robeson County*, 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004). Nevertheless, "a party need not exhaust an administrative remedy where the remedy is inadequate." *Affordable Care, Inc. v. North Carolina State Bd. of Dental Examiners*, 153 N.C. App. 527, 534, 571 S.E.2d 52, 58 (2002).

Facts justifying avoidance of administrative procedure must be pled in the complaint. *Id.* at 534, 571 S.E.2d at 58.

"The [administrative] remedy is considered inadequate unless it is calculated to give relief more or less commensurate with the claim." *Jackson for Jackson v. North Carolina Dept. of Human Resources*, 131 N.C. App. 179, 186, 505 S.E.2d 899, 904 (1998) (citation and quotation marks omitted), *disc. rev. denied*, 350 N.C. 594, 537 S.E.2d 213 (1999). Generally, constitutional claims are not subject to administrative remedies, so failure to pursue such remedies is not fatal to those claims. *See Meads v N.C. Dep't of Agric.*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1988); *Hardy ex rel. Hardy v. Beaufort County Bd. of Educ.*, 200 N.C. App. 403, 409, 683 S.E.2d 774, 779 (2009).[3]

Here, plaintiffs specifically pled that they were not required to exhaust administrative remedies and that the administrative remedies are inadequate. Nevertheless, we must consider whether the facts as pled justify failure to exhaust administrative procedures. We hold that plaintiffs sufficiently

---

[3] Exhaustion may be required for procedural due process claims. *See Edward Valves, Inc. v. Wake County*, 343 N.C. 426, 435, 471 S.E.2d 342, 347 (1996), *cert. denied*, 519 U.S. 1112, 136 L.Ed. 2d 839 (1997); *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010).

pled futility because the Currituck County Board of Adjustment would not be authorized to hear plaintiffs' common law vested rights claim.

> The 'vested rights' doctrine has evolved as a constitutional limitation on the state's exercise of its police power to restrict an individual's use of private property by the enactment of zoning ordinances. A determination of the 'vested rights' issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures.

*Huntington Properties, LLC v. Currituck County*, 153 N.C. App. 218, 226, 569 S.E.2d 695, 701 (2002) (citations, quotation marks, and brackets omitted).

"In reviewing the determination of an administrative enforcement officer pursuant to N.C. Gen. Stat. § 160A-388, a board of adjustment sits in a 'quasi-judicial capacity' and has only the authority it is granted under that statute." *Dobo v. Zoning Bd. of Adjustment of City of Wilmington*, 149 N.C. App. 701, 706, 562 S.E.2d 108, 111 (2002), *rev'd in part on other grounds*, 356 N.C. 656, 576 S.E.2d 324 (2003). N.C. Gen. Stat. § 160A-388(b) (2011) authorizes boards of adjustment to "hear and decide special and conditional use permits, requests for variances, and appeals of decisions of administrative officials charged with enforcement of the ordinance." Its role is solely

related to the interpretation of the ordinances and deciding whether to grant a variance from those ordinances. *See Godfrey v. Zoning Bd. of Adjustment of Union County*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986). Boards of adjustment do not have the authority to adjudicate constitutional claims. *Id.; Dobo*, 149 N.C. App. at 706, 562 S.E.2d at 111.

Some common law vested rights cases have been appealed from boards of adjustment[4]; others have been brought as civil actions without prior administrative proceedings.[5] These cases do not announce a clear rule for the proper method to pursue a vested rights claim. Nevertheless, a rule can be inferred from the appellate courts' treatment of those cases and the statutory authority of boards of adjustment discussed above. Our Supreme Court has differentiated between interpretations of zoning ordinances, which are properly considered by boards of adjustment, and constitutional challenges, which are not. *See*

---

[4] *See, e.g., Application of Campsites Unlimited, Inc.*, 287 N.C. 493, 215 S.E.2d 73 (1975), *Browning-Ferris Industries Of South Atlantic, Inc. v. Guilford County Bd. of Adjustment*, 126 N.C. App. 168, 484 S.E.2d 411 (1997), *Kirkpatrick v. Village Council for Village of Pinehurst*, 138 N.C. App. 79, 530 S.E.2d 338 (2000).

[5] *See, e.g., Town of Hillsborough v. Smith*, 276 N.C. 48, 170 S.E.2d 904 (1969), *Russell v. Guilford County*, 100 N.C. App. 541, 397 S.E.2d 335 (1990), *MLC Automotive, LLC v. Town of Southern Pines*, 207 N.C. App. 555, 702 S.E.2d 68 (2010), *disc. rev. denied*, 365 N.C. 211, 710 S.E.2d 2 (2011).

*Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 661-62 (holding that it was error to join a claim concerning the interpretation of development ordinances with constitutional challenges thereto), *cert. denied*, 496 U.S. 931, 110 L.Ed. 2d 651 (1990). We have noted that where interpretation of an ordinance is involved the property owner should follow the administrative procedure of seeking permission for a nonconforming use from the board of adjustment. *See Huntington Properties, LLC*, 153 N.C. App. at 227, 569 S.E.2d at 702; *see also Kirkpatrick*, 138 N.C. App. at 87-88, 530 S.E.2d at 343-44 (considering a common law vested rights claim in a case first brought to the board of adjustment, along with issues concerning interpretation of the ordinances). However, the discretion of a board of adjustment is not unlimited. Its "power to 'determine and vary' is limited to such variations and modifications as are in harmony with the general purpose and intent of the ordinance and do no violence to its spirit." *Lee v. Board of Adjustment of City of Rocky Mount*, 226 N.C. 107, 111, 37 S.E.2d 128, 132 (1946). A plaintiff is not required to request that the board of adjustment issue a variance that it does not have the authority to issue. *See Smith*, 276 N.C. at 57, 170 S.E.2d at 911.

Where the interpretation of the ordinance is not at issue, the ordinance prohibits the property owner's intended use, and the property owner is claiming a common law vested right to such a nonconforming use, the only claim is a constitutional one. In such a case, plaintiffs are not required to first exhaust the procedures before the board of adjustment. Here, as in *Smith*, plaintiffs' "contention is that they have a legal right to build, which right the city cannot take from them and for which no permit is authorized by the ordinance. . . . [T]he law does not require them to make a vain trip to the City Hall before exercising it." *Id.* at 57, 170 S.E.2d at 911. Plaintiffs specifically alleged that the meaning of the UDO was not in dispute and that their desired use was not allowed under the ordinance.

Therefore, we conclude that plaintiffs were not required to exhaust administrative remedies before the Currituck County Board of Adjustment in order to bring the present civil action. The trial court erred in dismissing plaintiffs' vested rights claim under Rule 12(b)(1) for failure to exhaust administrative remedies.

B.  Sufficiency of Claim

Next, we must consider whether plaintiffs' common law vested rights claim was sufficiently pled to state a cause of action. We hold that plaintiffs sufficiently pled their common law vested rights claim to survive a motion to dismiss.[6]

> A party's common law right to develop and/or construct vests when: (1) the party has made, prior to the [enactment or] amendment of a zoning ordinance, expenditures or incurred contractual obligations substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building; (2) the obligations and/or expenditures are incurred in good faith; (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party; and (4) the amended ordinance is a detriment to the party.

*Browning-Ferris*, 126 N.C. App. at 171-72, 484 S.E.2d at 414 (citations and quotation marks omitted).

"[W]hen a property owner makes expenditures in the absence of zoning . . . , subsequent changes in the zoning of the property may not prohibit the resulting nonconforming use." *Finch v. City of Durham*, 325 N.C. 352, 366, 384 S.E.2d 8, 16 (1989). A property owner need not rely on the existence of a permit authorizing construction if none was required at the time

---

[6] This case involves only common law vested rights; plaintiffs do not assert statutory vested rights under N.C. Gen. Stat. § 160A-385.1.

the expenditures were made. *MLC Automotive, LLC*, 207 N.C. App. at 565, 702 S.E.2d at 75. "To acquire such vested property right[s] it is sufficient that, prior to the . . . enactment of the zoning ordinance and with the requisite good faith, he make a substantial beginning of construction and incur therein substantial expense." *Campsites Unlimited*, 287 N.C. at 501, 215 S.E.2d at 78 (citation and quotation marks omitted). "A party acts in good faith reliance when it has an honest belief that the nonconforming use would not violate declared public policy." *Kirkpatrick*, 138 N.C. App. at 87, 530 S.E.2d at 343 (citation, quotation marks, and brackets omitted).

As we are considering a 12(b)(6) motion to dismiss, we must assume that the facts alleged by plaintiffs are true and liberally construe the complaint. *Mosteller v. Duke Energy Corp.*, 207 N.C. App. 1, 11, 698 S.E.2d 424, 431 (2010), *disc. rev. denied*, 365 N.C. 211, 710 S.E.2d 38 (2011). The relevant allegations are as follows:

In 1966, plaintiffs or their predecessors in interest acquired approximately 1400 acres of property in Currituck County. The property was not then zoned and commercial development was allowed. In June 1966, the County adopted a "Subdivision Ordinance." On 2 September 1969, consistent with

this ordinance, Plaintiff Ocean Associates recorded a plat showing 577 residential lots and six business areas on the property. Such commercial uses were permitted in that area at the time. The County asked that the commercial development not begin until there was sufficient residential density in the area to support the businesses and plaintiffs agreed. Plaintiffs began development in 1969. Between 1968 and 1971, plaintiffs spent approximately $425,050.00 to prepare both the residential and the business lots. These expenditures included general engineering, land geosciences, road grading, canal digging, dune building, lot filling, evacuating ditches, landscaping, and surveying. Plaintiffs would not have expended these funds "but for the fact that business and commercial uses were permitted on the Property under County law . . . ." In the early 1970s, plaintiffs completed the infrastructure that would serve both the business and residential lots.

In October 1971, Currituck County adopted a zoning ordinance and prepared a map. The map seemed to designate the property as "RA-20." The RA-20 district permitted mostly low density residential and agricultural uses, with only limited business or commercial uses. The County adopted a second zoning ordinance in 1975, which seemed to continue designating

plaintiffs' property as RA-20. The County assured property owners that subdivisions approved prior to adoption of these ordinances would continue to be allowed.

In 1989, the County adopted a UDO, which is still in effect. Although unclear, plaintiffs' property was apparently zoned RO2. The RO2 district allows only limited business uses. Plaintiffs' planned uses for the property are not allowed under the UDO. Plaintiffs moved forward with further development of the business lots in 2004. The County informed plaintiffs that their intended uses were not permitted under the UDO and denied that plaintiffs had any vested rights to use their property in that manner.

Taking these facts as true, we hold that plaintiffs sufficiently pled their claim for common law vested rights to survive a motion to dismiss. Plaintiffs have alleged that their property was not zoned at the time they made their expenditures to prepare the business lots. They have alleged that this use was lawful at the time the expenditures were made and that the expenditures were made in good faith reliance on that fact. They have alleged that they expended over $400,000 on the development. They allege that they are prejudiced by the zoning

ordinance because their intended commercial use would not be permitted under the ordinance.

In *Campsites Unlimited*, our Supreme Court held that the property owners had a vested right because they made substantial expenditures in reliance on the lack of zoning. 287 N.C. at 502, 215 S.E.2d at 78. In that case, the property owners had cleared and constructed roadways and staked out lots. *Id.* The alleged construction activities here were at least as substantial as those in *Campsites Unlimited*, if not more. Plaintiffs' clearing of the lots, canal digging, dune building, and road grading were intended to prepare the site for development. *Cf. Russell*, 100 N.C. App. at 545, 397 S.E.2d at 337 (holding that the plaintiff's expenditures were not substantial where there was "no evidence of ground breaking, tree clearing or anything else done to prepare the site for development"). We conclude that these expenditures were "substantial."

Additionally, taking the allegations of the complaint as true, plaintiffs' reliance on the lawfulness of their project was in good faith. The required "good faith"

> is not present when the landowner, with knowledge that the adoption of a zoning ordinance is imminent and that, if adopted, it will forbid his proposed construction and use of the land, hastens, in a race with the town commissioners, to make expenditures or

> incur obligations before the town can take its contemplated action so as to avoid what would otherwise be the effect of the ordinance upon him.

*Campsites Unlimited*, 287 N.C. at 503, 215 S.E.2d at 79 (citation and quotation marks omitted).

Here, plaintiffs filed plats indicating business development before any zoning ordinance was in place. There is no indication that they were aware of any plans to zone their property such that business development would not be allowed. *Cf. id.* The face of the complaint does not reveal that plaintiffs failed to acquire any other permits required to begin construction. *Cf. Browning-Ferris*, 126 N.C. App. at 172, 484 S.E.2d at 414. Indeed, plaintiffs have alleged that the County was aware of their plans and condoned them.

In sum, plaintiffs' allegations, if true, show that they have made substantial expenditures in good faith reliance on the lack of zoning at the time the expenditures were made. We conclude that plaintiffs have sufficiently pled a common law vested rights claim. Accordingly, we hold that the trial court erred in allowing defendants' motion to dismiss under Rule 12(b)(6).[7]

---

[7] There was a question raised at oral arguments concerning whether the plaintiffs other than Ocean Associates could bring a

IV.  Equal Protection and Due Process § 1983 Claims

Plaintiffs next argue that the trial court erred in dismissing their equal protection and substantive due process claims under 42 U.S.C. § 1983 (2006) for failure to exhaust administrative remedies and sovereign immunity.[8] Although the basis for its decision is not clear from the trial court's order, defendants moved to dismiss plaintiffs' § 1983 claims on the basis of failure to exhaust administrative remedies, sovereign immunity, and legislative immunity. Defendants did not argue at the motion hearing that the § 1983 claim was improperly pled or that the claims would be barred by the statute of limitations. On appeal, defendants do not argue that they are immune.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must show that [a person], acting under color of law, has 'subjected [him] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Copper*, 363

vested rights claim as successors in interest even though they did not actually expend the funds themselves. The individuals involved with the property are apparently the same, but the corporate forms have changed. This issue was not raised in the pleadings, briefed by the parties, or addressed by the trial court, so we express no opinion on that question.

[8] Defendants did not argue to the trial court and do not argue on appeal that plaintiffs failed to allege any element of these claims.

N.C. at 789, 688 S.E.2d at 429 (quoting 42 U.S.C. § 1983 (2006)). "[A] municipality is a 'person' within the meaning of section 1983." *Moore v. City of Creedmoor*, 345 N.C. 356, 365, 481 S.E.2d 14, 20 (1997).

Plaintiffs alleged that the County has allowed other similarly situated property owners to operate businesses in the zoning districts that prohibit commercial buildings while denying plaintiffs the opportunity to do the same. They have alleged that the County treated them differently because they are Jewish. Moreover, plaintiffs allege that the County's decision to treat them differently was arbitrary and without any rational relationship to a valid governmental objective. They allege that they have been damaged by this discrimination because they have lost income they could have received from the commercial development of their property. All of the claims were brought against the County itself and the individual County Commissioners in their official capacity.

First, plaintiffs' § 1983 claims may not be dismissed for failure to exhaust administrative remedies. While claims for violation of procedural due process may be subject to exhaustion requirements, *Copper*, 363 N.C. at 789-90, at 688 S.E.2d at 430, substantive constitutional claims are not, *Edward Valves, Inc.*,

343 N.C. at 435, 471 S.E.2d at 347. Here, plaintiffs' claims are founded on substantive due process and equal protection. They were not required to exhaust any administrative process to bring these claims. *See Edward Valves, Inc.*, 343 N.C. at 435, 471 S.E.2d at 347.

Second, defendants are not protected from § 1983 claims on the basis of sovereign immunity. *Corum v. University of North Carolina Through Bd. of Governors*, 330 N.C. 761, 772, 413 S.E.2d 276, 283 ("[S]overeign immunity alleged under state law is not a permissible defense to section 1983 actions."), *disc. rev. denied*, 506 U.S. 985, 121 L.Ed. 2d 431 (1992); *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 627, 538 S.E.2d 601, 616 (2000) (noting that "a municipal entity has no claim to immunity in a section 1983 suit" (citation and quotation marks omitted)), *disc. rev. denied*, 353 N.C. 372, 547 S.E.2d 811 (2001). Indeed, defendants do not argue on appeal that they are immune from suit under § 1983.

Finally, defendants argue that plaintiffs' § 1983 claim is barred by the statute of limitations concerning challenges to zoning ordinances. Plaintiffs urge us not to consider this argument since it was not raised below. Defendants *did* argue in their brief to the trial court that the statute of limitation

barred plaintiffs' § 1983 claims, but only "[t]o the extent Plaintiffs['] due process and equal protection claims are a based on" a lack of notice of the amendments to the zoning ordinances. But plaintiffs' § 1983 claims are not based on any notice issue. Plaintiffs specifically alleged in their amended complaint that they are not "attacking a defect in the ordinance adoption process . . . ." Defendants apparently recognized this fact as they did not argue at the motions hearing that the statute of limitations would require dismissal of these claims. Moreover, it is not clear that they ever received a ruling from the trial court on this issue. Therefore, they have not preserved this issue for our review and we will not address it. N.C.R. App. P. 10(a)(1); *Lovelace v. City of Shelby*, 153 N.C. App. 378, 384, 570 S.E.2d 136, 140 (declining to address an appellee's argument that was not raised below), *disc. rev. denied*, 356 N.C. 437, 572 S.E.2d 785 (2002).

We hold that the trial court erred in dismissing plaintiffs' claims under 42 U.S.C. § 1983 because the claims are not barred by sovereign immunity or failure to exhaust administrative remedies. Therefore, we reverse the portion of the trial court's order dismissing these claims.

V.   Tax Claim

Plaintiffs finally argue that the trial court erred in dismissing their claim under Article V, Section 2(2) of the North Carolina Constitution. We disagree.

Plaintiffs alleged that defendant violated Article V, Section 2(2) of the North Carolina Constitution by refusing to allow business development on property that it has classified for tax purposes as business property. The North Carolina Constitution "requires that taxation must be imposed by a uniform rule." *HED, Inc. v. Powers*, 84 N.C. App. 292, 294, 352 S.E.2d 265, 266, *disc. rev. denied*, 319 N.C. 458, 356 S.E.2d 4 (1987). That requirement is met "if the rate is uniform throughout each taxing authority's jurisdiction." *State ex rel. Dyer v. City of Leaksville*, 275 N.C. 41, 49, 165 S.E.2d 201, 206 (1969).

Here, plaintiffs do not actually challenge the tax classification or the uniformity of the tax rules. Indeed, they assert that the tax classification of their property as business property is entirely accurate. They have not alleged that defendants tax such property in a non-uniform manner. At best, the tax classification of plaintiffs' property might be relevant to the "good faith" element of their vested rights claim. But their allegations are insufficient to state a claim under

Article V, Section 2 of the North Carolina Constitution. Therefore, we affirm the trial court's dismissal of this claim.

## VI.  Conclusion

For the foregoing reasons, we conclude that the trial court erred in dismissing plaintiffs' vested rights claim and their § 1983 claims, but that it properly dismissed plaintiffs' tax claim. Therefore, we reverse those portions of the trial court's order dismissing the vested rights and § 1983 claims, affirm the portion dismissing the tax claim, and remand for further proceedings.

REVERSED, in part; AFFIRMED, in part; and REMANDED.

Judges HUNTER, JR., Robert N. and DILLON concur.