Associated Hardwoods, Inc. v. Lail, 2018 NCBC 79.

STATE OF NORTH CAROLINA

CALDWELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 329

ASSOCIATED HARDWOODS, INC.,

     Plaintiff,

v.

GARY N. LAIL; SUSAN G. LAIL;
DAVID C. LAIL; CATHERINE C.
LAIL; JENNIFER NOBLE, in her
capacity as Administrator of THE
ESTATE OF CLYDE L. LAIL;
EDWARD JOSEPH MCNEIL, JR.;
and MCNEIL & PARTNERS, LP,

     Defendants.

**ORDER AND OPINION
ON MOTIONS TO DISMISS**

1.    **THIS MATTER** is before the Court on Defendants Gary N. Lail ("Gary"), Susan G. Lail ("Susan"), David C. Lail ("David"), and Cathleen C. Lail's ("Cathleen") Motion to Dismiss (the "Lail Defendants' Motion to Dismiss"), and Defendant Jennifer Noble's ("Noble"), as Administrator of the Estate of Clyde L. Lail ("Clyde"), Motion to Dismiss ("Noble's Motion to Dismiss"). The Lail Defendants' Motion to Dismiss and Noble's Motion to Dismiss are referred to collectively herein as the "Motions." For the reasons set forth herein, the Court **GRANTS** the Lail Defendants' Motion to Dismiss, and **GRANTS in part** and **DENIES in part** as moot Noble's Motion to Dismiss.

*Richard L. Robertson & Associates, P.A., by Richard L. Robertson, for Plaintiff.*

*Young, Morphis, Bach, and Taylor, LLP, by Jimmy R. Summerlin, Jr., for Defendants Gary N. Lail and Susan G. Lail.*

*Patrick, Harper & Dixon, LLP, by Michael J. Barnett, for Defendants David C. Lail and Cathleen C. Lail.*

*Connors Morgan, PLLC, by C. Scott Meyers, for Defendant Jennifer Noble, in her capacity as Administrator of the Estate of Clyde L. Lail.*

*Erwin, Bishop, Capitano & Moss, P.A., by Matthew M. Holtgrewe, for Defendants Edward Joseph McNeil, Jr. and McNeil & Partners, LP.*

Robinson, Judge.

## I. PROCEDURAL HISTORY

2. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

3. On March 13, 2018, Plaintiff initiated this action by filing its Verified Complaint. (ECF No. 3.)

4. This action was designated as a mandatory complex business case by order of Chief Justice Mark Martin of the Supreme Court of North Carolina dated April 26, 2018, (ECF No. 6), and was assigned to the undersigned by order of then-Chief Business Court Judge James L. Gale dated April 30, 2018, (ECF No. 2).

5. The Verified Complaint named Wayne Bach ("Bach") as a Defendant in his capacity as administrator of the estate of Clyde L. Lail ("Clyde's Estate"). (Compl. 1, ECF No. 3.) However, on March 27, 2018, Defendant Noble was appointed administrator of Clyde's Estate in lieu of Bach. (Verified Am. Compl. ¶ 4, ECF No. 8 ["Am. Compl."].) Accordingly, on May 2, 2018, Plaintiff filed its Amended Verified Complaint substituting Noble for Bach as a defendant. (*Compare* Compl. 1, *with* Am. Compl. 1.) The Amended Complaint asserts claims against the Lail Defendants for violation of the Uniform Voidable Transactions Act ("fraudulent transfer claim") and asserts claims against all Defendants for breach of fiduciary duty, constructive fraud,

and unfair and deceptive trade practices ("UDTP"). (Am. Compl. 4–13.)

6. The Lail Defendants' Motion to Dismiss was filed on May 25, 2018 pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 15.)

7. On May 31, 2018, Noble filed her motion to dismiss, joining the arguments raised by the Lail Defendants pursuant to Rule 12(b)(1) and asserting additional arguments for dismissal of the claims against Clyde's Estate pursuant to Rule 12(b)(6). (ECF No. 22.) Because Noble is being sued in her capacity as administrator of Clyde's Estate and joins the Lail Defendants' Motion to Dismiss, references to the Lail Defendants' Motion to Dismiss shall include Noble.

8. Briefing on the Motions is complete and the Court held a hearing on the Motions on August 2, 2018 at which all parties were represented by counsel.

9. The Motions are ripe for resolution.

## II.    FACTUAL BACKGROUND

10. The Court does not make findings of fact on the Motions, but recites only those facts that are relevant and necessary to the Court's determination of the Motions.

11. Plaintiff Associated Hardwoods, Inc. ("Plaintiff") is a North Carolina corporation with its principal office in Granite Falls. (Am. Compl. ¶ 1.)

12.     Gary, Susan, David, Cathleen,[1] and Clyde (who passed away before the commencement of this litigation) (collectively, the "Lail Defendants") were directors of Quaker Furniture, Inc. d/b/a Studio Q Furniture ("Quaker"), a North Carolina corporation that manufactured furniture. (Am. Compl. ¶ 10.) Gary, David, and Clyde (during his life) were also shareholders and officers of Quaker at certain times. (Am. Compl. ¶ 10.)

13.     For years prior to 2016, Plaintiff supplied Quaker with dry kiln hardwood lumber to be used by Quaker in its furniture business. (Am. Compl. ¶ 9.) Plaintiff would fill Quaker's orders and later submit invoices to Quaker requesting payment for the lumber previously delivered. (Lail Defs.' Mot. Dismiss Ex. 2 to Ex. A, ECF No. 15.1.) Plaintiff did not secure the debt owed to it by Quaker. (Am. Compl. ¶ 9.)

14.     By May 31, 2016, Quaker was insolvent on a balance sheet and cash flow basis and could not pay its bills as they became due in the regular course of business. (Am. Compl. ¶ 14.) Notwithstanding Quaker's financial condition, the Lail Defendants, on behalf of Quaker, continued to order lumber from Plaintiff. (Am. Compl. ¶ 15.a.)

15.     Around August 22, 2016, Gary, David, and Clyde sold their shares in Quaker and the assets of Quaker for inadequate consideration to Defendant McNeil & Partners, LP ("McNeil & Partners"). (Am. Compl. ¶ 15.c.) Defendant Edward

---

[1] Plaintiff's original and amended complaints misname Cathleen as "Catherine C. Lail." (Compl. 1; Am. Compl. 1.) Because Cathleen has not challenged that she was properly served with process or the Court's jurisdiction over her, the Court sees no need to require the Amended Complaint to be further amended at this time.

Joseph McNeil, Jr. ("McNeil," together with McNeil & Partners, the "McNeil Defendants") is the general partner of McNeil & Partners and became an officer and the sole director of Quaker following the stock transfer. (Am. Compl. ¶¶ 6, 11.) Thereafter, none of the Lail Defendants were involved with Quaker, except for Gary, who remained an officer of Quaker. (Am. Compl. ¶¶ 10–11.)

16.     Plaintiff alleges that the Lail Defendants' sale of their Quaker shares and Quaker's assets was a leveraged buyout for which no consideration passed to the Lail Defendants or Quaker for the benefit of Quaker's creditors. (Am. Compl. ¶ 15.c, g–h.) In addition, Plaintiff alleges that the Lail and McNeil Defendants engaged in unwritten side agreements whereby McNeil would refinance Quaker's equipment and machinery to pay Quaker's existing secured obligations guaranteed by the Lail Defendants. (Am. Compl. ¶ 15.f.) Plaintiff further alleges that the McNeil Defendants, who had no experience in the furniture industry, stripped Quaker of its working capital and equity by paying themselves and McNeil's other businesses exorbitant fees, salaries, and cash withdrawals. (Am. Compl. ¶ 15.d–e.)

17.     At the time of the sale, Quaker had assets in excess of its secured liabilities that exceeded $1 million, which could have been distributed to unsecured creditors had the Lail Defendants wound up Quaker's affairs instead of selling their shares. (Am. Compl. ¶ 15.b.) Plaintiff alleges that the Lail Defendants' conduct preferred their interest over the rights of Quaker's unsecured creditors, including Plaintiff, and was intended to prevent such creditors from recovering any of Quaker's assets. (Am. Compl. ¶¶ 15.f–h, 18–20.)

18. After McNeil & Partners purchased the Lail Defendants' shares of stock in Quaker, and McNeil became the sole director, Quaker continued to purchase lumber from Plaintiff without informing Plaintiff of Quaker's financial condition. (Am. Compl. ¶ 30.a.)

19. For purposes of the Lail Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), the Court takes judicial notice of several proceedings involving Plaintiff and Quaker. First, the Court takes judicial notice that on March 13, 2017, Plaintiff filed a complaint in the General Court of Justice, Superior Court Division, Caldwell County, asserting claims against Quaker for failing to pay for lumber that Quaker had ordered and accepted from Plaintiff. (Lail Defs.' Mot. Dismiss Ex. A.) Plaintiff's complaint in that action reveals that Plaintiff claimed that Quaker had failed to pay for lumber purchased from approximately November 23, 2016 to February 28, 2017. (Lail Defs.' Mot. Dismiss Ex. A, ¶ 9.) Attached to that complaint was a report listing Quaker's unpaid invoices, bills of lading, and invoices from the alleged three-month time period and showing that Quaker then owed Plaintiff $117,915.62. (Lail Defs.' Mot. Dismiss Exs. 1–3 to Ex. A.)

20. Next, the Court takes judicial notice that on August 28, 2017, Quaker filed a Chapter 11 voluntary petition in the U.S. Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Action"). (Lail Defs.' Mot. Dismiss Ex. C, ECF No. 15.3.) Along with twenty-nine other creditors of Quaker, Plaintiff filed a proof of claim form in the Bankruptcy Action on September 5, 2017 asserting that Quaker owed Plaintiff $129,742.06 for unpaid invoices from November 23, 2016

through February 28, 2017. (Lail Defs.' Mot. Dismiss Ex. B, ECF No. 15.2.) Finally, the Court takes judicial notice that on October 13, 2017, Quaker voluntarily converted the Bankruptcy Action to a Chapter 7 proceeding that is still pending before the bankruptcy court. (Lail Defs.' Mot. Dismiss Ex. D, ECF No. 15.4.)

### III. LAIL DEFENDANTS' MOTION TO DISMISS

#### A. Rule 12(b)(1)

21. "Rule 12(b)(1) permits a party to contest, by motion, the jurisdiction of the trial court over the subject matter in controversy." *Swan Beach Corolla, LLC v. Cty. of Currituck*, 234 N.C. App. 617, 621, 760 S.E.2d 302, 307 (2014). When it appears that subject matter jurisdiction is lacking, a court shall dismiss the action. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3).

22. "In order for a court to have subject matter jurisdiction to hear a claim, the party bringing the claim must have standing." *Newton v. Barth*, 788 S.E.2d 653, 659 (N.C. Ct. App. 2016); *see also Smith v. Forsyth Cty. Bd. of Adjust.*, 186 N.C. App. 651, 653, 652 S.E.2d 355, 357 (2007) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, and is a question of law . . . ." (citation omitted)). "[T]he party seeking to bring [its] claim before the court must include allegations which demonstrate why [it] has standing in the particular case . . . ." *Cherry v. Wiesner*, 245 N.C. App. 339, 346, 781 S.E.2d 871, 877 (N.C. Ct. App. 2016).

> Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Neuse River Found. Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

23.     "Unlike a Rule 12(b)(6) motion, consideration of matters outside the pleadings does not convert the Rule 12(b)(1) motion to one for summary judgment . . . ." *Cunningham v. Selman*, 201 N.C. App. 270, 280, 689 S.E.2d 517, 524 (2009).     Accordingly, a court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009); *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).   "However, if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010).

**B.     <u>Standing to Assert Claims Against Directors of a Bankrupt Corporation</u>**

24.     The Lail Defendants move for dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) arguing that Plaintiff lacks standing to assert claims against them as Quaker's former officers and directors because such claims belong to Quaker's bankruptcy estate.  (Lail Defs.' Mot. Dismiss ¶ 9, ECF No. 15.)

25.     "When a corporation enters bankruptcy, any legal claims that could be maintained *by the corporation* against other parties become part of the bankruptcy estate, and claims that are part of the bankruptcy estate may only be brought by the trustee in the bankruptcy proceeding."  *Newton*, 788 S.E.2d at 659.  The filing of a

bankruptcy petition gives the trustee of the bankruptcy estate full authority over claims belonging to the bankruptcy estate such that "a creditor may not pursue such a claim unless there is a judicial determination that the trustee in bankruptcy has abandoned the claim." *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 25, 560 S.E.2d 817, 822 (2002); *see also In re Bostic Constr., Inc.*, 435 B.R. 46, 60 (Bankr. M.D.N.C. June 25, 2012) ("When a corporation files bankruptcy, the bankruptcy estate succeeds to the corporation's rights against its directors."). A North Carolina state trial court generally lacks subject matter jurisdiction to hear claims belonging to a bankruptcy estate. *Keener Lumber Co.*, 149 N.C. App. at 26, 560 S.E.2d at 822. However, where a claim is personal to the creditor, such claim is not property of the bankruptcy estate. *Newton*, 788 S.E.2d at 659. Whether a claim is personal to a creditor depends on state law. *Id.*

### 1. Breach of Fiduciary Duty and Constructive Fraud

26. The Amended Complaint alleges that the Lail Defendants breached their fiduciary duties to Plaintiff by continuing to purchase lumber from Plaintiff without disclosing Quaker's poor financial condition and then selling their shares of Quaker and Quaker's assets pursuant to agreements with the McNeil Defendants that preferred the Lail Defendants' interests over the interest of Quaker's creditors in receiving a pro rata distribution of Quaker's assets. (Am. Compl. ¶ 15.) Plaintiff alleges that such breaches amounted to constructive fraud. (Am. Compl. ¶ 16.)

27. "Under North Carolina law, directors of a corporation generally owe a fiduciary duty to the corporation, and where it is alleged that directors have breached

this duty, the action is properly maintained by the corporation rather than any individual creditor . . . ." *Spoor v. Barth*, 244 N.C. App. 670, 682, 781 S.E.2d 627, 635 (2016) (emphasis omitted). Accordingly, "creditors . . . of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation[.]" *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997). "However, where a cause of action is founded on injuries peculiar or personal to [an individual creditor], so that any recovery would not pass to the corporation and indirectly to other creditors, the cause of action belongs to, and is properly maintained by, that particular creditor . . . ." *Keener Lumber Co.*, 149 N.C. App. at 26, 560 S.E.2d at 822 (quotation marks omitted); *see also Newton*, 788 S.E.2d at 659–60 ("[C]reditors of a bankruptcy estate may prosecute individual actions against a third party if they can show either (1) that the wrongdoer owed [them] a special duty, or (2) that the injury suffered by the [creditors] is personal to [them] and distinct from the injury sustained by the corporation itself." (quotation marks omitted)).

28. Notwithstanding the general rule that directors owe fiduciary duties directly to the corporation, a director's fiduciary duty to creditors arises "where there exist circumstances amounting to a 'winding-up' or dissolution of the corporation." *Keener Lumber Co.*, 149 N.C. App. at 31, 560 S.E.2d at 825 (quotation marks omitted); *see also Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 61, 554 S.E.2d 840, 847 (2001) ("[A] corporate director can breach a fiduciary duty to a creditor if 'the transaction at issue [] occurs under circumstances amounting to a "winding-up" or

dissolution of the corporation.'" (second alteration in original) (quotation marks omitted)). In determining whether circumstances amount to a "winding up" or dissolution, our courts consider various factors, which include:

> (1) whether the corporation was insolvent, or nearly insolvent, on a balance sheet basis; (2) whether the corporation was cash flow insolvent; (3) whether the corporation was making plans to cease doing business; (4) whether the corporation was liquidating its assets with a view of going out of business; and (5) whether the corporation was still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so.

*Keener Lumber Co.*, 149 N.C. App. at 31, 560 S.E.2d at 825 (citing *Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 528, 458 S.E.2d 896 (1995)).

29. When such circumstances are present, the director "is generally prohibited from taking advantage of his intimate knowledge of the corporate affairs and his position of trust for his own benefit and to the detriment of the creditors to whom he owes the duty" and "must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis." *Id.* at 33, 560 S.E.2d at 826–27. Accordingly, our Court of Appeals has held that

> a claim brought by a creditor against a director of a corporation, alleging that the director has committed constructive fraud by breaching his fiduciary duty owed directly to the creditor, is a claim founded on injuries peculiar or personal to the individual creditor, and, therefore, is a claim that belongs to the creditor and not the corporation.

*Id.* at 26–27, 560 S.E.2d at 823.

30. The Lail Defendants argue that Plaintiff lacks standing to pursue its claims against them as directors of Quaker because such claims are property of Quaker's bankruptcy estate and, therefore, must be brought by the bankruptcy trustee. (Lail

Defs.' Mot. Dismiss ¶ 9.) The Lail Defendants argue that dismissal is proper because Plaintiff has failed to allege facts indicating that the Lail Defendants owed a special duty directly to Plaintiff or that Plaintiff suffered a peculiar or personal injury distinct from the injury suffered by all other creditors of Quaker. (Lail Defs.' Br. Supp. Mot. Dismiss 3–4, ECF No. 16.)

31. Plaintiff argues that it has standing to assert claims against the Lail Defendants because the Amended Complaint adequately alleges that circumstances existed where Quaker was "winding up" or in dissolution such that the Lail Defendants, as directors of Quaker, owed fiduciary duties to Plaintiff, as a creditor of Quaker, thereby establishing a special duty owed directly to Plaintiff. (Pl.'s Resp. Br. Opp'n Lail Defs.' Mot. Dismiss 10, ECF No. 28 ["Pl.'s Br. Opp'n"].) Plaintiff argues, relying on the Court of Appeals' decision in *Keener*, that its breach of fiduciary duty and constructive fraud claims, therefore, survive. (Pl.'s Br. Opp'n 10.) Plaintiff further argues that it has standing because "Plaintiff's injuries require different compensatory relief than that of any other creditor, and such injuries were caused by the Defendants' acts of contracting with Plaintiff—no other creditor was involved in any lumber transaction between Plaintiff and Quaker[.]" (Pl.'s Br. Opp'n Lail Defs.' Mot. Dismiss 12–13.) Although not entirely clear, the Court understands Plaintiff's argument to be that its injuries are unique because it was the only creditor that supplied lumber to Quaker. Public filings in the Bankruptcy Action reveal that there are numerous unsecured creditors of Quaker who supplied various goods and services to the bankrupt company. Notice to Creditors Holding 20 Largest Unsecured Claims

at 3, *In re Quaker Furniture, Inc.*, No. 17-50583 (Bankr. W.D.N.C. Aug. 30, 2017), ECF No. 6.

32. Plaintiff's standing argument ignores that the Amended Complaint neither alleges (1) that Plaintiff was directly owed a duty separate from the duty the Lail Defendants owed to Quaker's creditors to treat all creditors of the same class equally, nor (2) that Plaintiff suffered a unique injury that was not shared by all of Quaker's unsecured creditors.

33. Instead, Plaintiff's counsel argued at the hearing that the Lail Defendants, as directors of Quaker, had an obligation once the company became insolvent to have a plan in place to protect creditors' right to a pro rata distribution of company assets. The Court is unaware of any obligation on shareholders, officers, or directors who seek to exit a corporation to have a "plan in place" to protect a creditor's right to a pro rata distribution.

34. Rather, as noted above, the fiduciary duty that directors of an insolvent corporation owe to creditors is a duty to "treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis" and not to "tak[e] advantage of [the director's] intimate knowledge of the corporate affairs and his position of trust for his own benefit and to the detriment of the creditors to whom he owes the duty[.]" *Keener Lumber Co.*, 149 N.C. App. at 33, 560 S.E.2d at 826–27.

35. "[W]hen all creditors of an insolvent or bankrupt corporation share an injury based on a common act, only a receiver or trustee has standing to assert the creditors' collective claim against directors on behalf of the corporation." *Angell v.*

*Kelly*, 336 F. Supp. 2d 540, 544–45 (M.D.N.C. 2004) (citing *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)). Indeed, a review of North Carolina cases and federal cases applying North Carolina law reveals that an individual creditor typically only has standing to sue directors of a debtor corporation where some misconduct was directed specifically at plaintiff or the directors were alleged to have misappropriated funds that were earmarked for plaintiff. *See, e.g.*, *Angell*, 336 F. Supp. 2d at 547 (alleged misrepresentations that were made only to plaintiffs and which induced plaintiffs to take detrimental action were "factually unique to [p]laintiffs as among [debtor]'s other creditors" thus conferring standing on plaintiffs); *In re Midstate Mills, Inc.*, No. 13-50033, 2015 Bankr. LEXIS 3105, at *23–24 (Bankr. W.D.N.C. Sept. 15, 2015) (unpublished) (standing existed where plaintiffs alleged that directors and officers falsely represented to plaintiffs that goods shipped would be paid for and that plaintiffs would be substantially paid when the debtor corporation was sold); *Newton*, 788 S.E.2d at 661 (customers, vendors, and suppliers had standing to sue debtor corporation's officer who falsified financial reports and directed corporate staff to fraudulently misrepresent to creditors that the corporation would receive additional funds); *Phillips & Jordan, Inc. v. Bostic*, 2012 NCBC LEXIS 36, at *5, *17–19 (N.C. Super. Ct. June 1, 2012) (plaintiff subcontractor had standing to assert claims against directors based on allegations that defendants made preferential payments for their personal benefit out of construction loan proceeds that plaintiff believed would be used to pay its construction costs); *see also Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 601–02 (1980) (plaintiff had individual

standing to sue corporate insiders based on allegations that corporate directors failed to earmark funds that were to be held specifically for plaintiff apart from corporate assets); *Lillian Knitting Mills Co. v. Earle*, 233 N.C. 74, 75, 62 S.E.2d 492, 493 (1950) (individual creditor could maintain claim alleging that officers and directors made fraudulent misrepresentations directly to that creditor).

36.     Conversely, where a plaintiff-creditor seeks to advance claims that "could also have been pursued by any of [the debtor corporation]'s creditors, the [creditor] "lack[s] standing because the claims are property of the bankruptcy estate." *Angell*, 336 F. Supp. 2d at 545; *see also, e.g., M-Tek Kiosk, Inc. v. Clayton*, No. 1:15CV886, 2016 U.S. Dist. LEXIS 67036, at *27 (M.D.N.C. May 23, 2016) (unpublished) (allegations of fraudulent transfers that could have been alleged by any of the debtor corporation's creditors were insufficient to confer standing); *Alvarez v. Ward*, No. 1:11cv03, 2012 U.S. Dist. LEXIS 4557, at *14–16 (Bankr. W.D.N.C. Jan. 13, 2012) (unpublished) (plaintiffs lacked standing where the injuries alleged were identical to other creditors' injuries and were caused by the common acts of defendants in fraudulently transferring the assets of the company); *Underwood*, 270 N.C. at 703, 155 S.E.2d at 213 (allegations that officers and directors misappropriated corporate assets to themselves were wrongs committed against the insolvent corporation).

37.     Plaintiff's allegations demonstrate that none of the Lail Defendants' alleged conduct was directed specifically toward Plaintiff or treated Plaintiff in a manner different from Quaker's other unsecured creditors. (Am. Compl. ¶¶ 15, 33.)  Further, Plaintiff's reliance on *Keener* is misplaced.  In *Keener*, defendant-director decided to

liquidate a struggling corporation's assets in order to use the money to pay the corporation's outstanding debts. *Keener Lumber Co.*, 149 N.C. App. at 23, 560 S.E.2d at 820. The director used the funds from the liquidated assets to then fully pay, or almost fully pay, existing secured debts and an unsecured debt to a company for which defendant was the chief operating officer, president, director, and majority shareholder. *Id.* at 22–23, 560 S.E.2d at 820–21. However, no payment was made to plaintiff-unsecured creditor. *Id.* at 23, 560 S.E.2d at 820–21. Thus, the *Keener* plaintiff's claim for breach of fiduciary duty was premised on allegations that defendant (1) directed the company to continue purchasing goods from plaintiff without informing plaintiff of the company's financial status and (2) made preferential payments to another unsecured creditor where a duty existed to treat all creditors of the same class equally. *Id.* at 32, 560 S.E.2d at 826. Plaintiff makes no allegation that it was treated any differently than other unsecured creditors of Quaker. Rather, Plaintiff alleges that the Lail Defendants preferentially paid off "existing secured obligations of Quaker guaranteed by the Lail Defendants[.]" (Am. Compl. ¶ 15.f.)

38. The Court further finds unavailing Plaintiff's argument that it has suffered a unique injury because it was the only creditor who entered into lumber transactions with Quaker. Plaintiff's injury is no different than any other unsatisfied creditor of Quaker in that Plaintiff seeks to be paid for the goods it rendered to Quaker just as other unsecured creditors seek to be paid for the goods or services they provided to Quaker. Plaintiff does not seek to recover the lumber sold on credit, but the money

owed to Plaintiff by Quaker for the value of the lumber. (Am. Compl. 15.) In fact, the Amended Complaint repeatedly refers to unsecured creditors of Quaker as an injured group of which Plaintiff was a part. (*See, e.g.*, Am. Compl. ¶ 15.) Such allegations belie Plaintiff's argument that it suffered a unique injury different from that experienced by Quaker's other unsecured creditors.

39. Accordingly, the Court concludes that Plaintiff's breach of fiduciary duty and constructive fraud claims are property of the bankruptcy estate and Plaintiff, therefore, lacks standing.

40. Even assuming *arguendo* that Plaintiff's claims do not belong to the bankruptcy estate, Plaintiff lacks standing for another reason—because it cannot demonstrate a concrete injury caused by the Lail Defendants.

41. Apart from the standing inquiry as it relates to creditors of a bankrupt corporation, standing more generally "refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter." *Neuse River Found. Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 51. To establish this more general standing, a plaintiff must demonstrate three elements: (1) an injury in fact, i.e., "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) that the injury is fairly traceable to defendants' actions; and (3) that the injury will likely be redressed by a decision in plaintiff's favor. *Strates Shows, Inc. v. Amusements of Am., Inc.*, 184 N.C. App. 455, 460, 646 S.E.2d 418, 423 (2007).

42. Plaintiff alleges that it was harmed by the Lail Defendants' alleged breaches of fiduciary duty and constructive fraud because Plaintiff did not receive its pro rata distribution of Quaker's assets as payment for lumber that Plaintiff delivered to Quaker. (Am. Compl. ¶¶ 15–16; *see also* Pl.'s Br. Opp'n 12–13 (arguing that Plaintiff's injuries are unique because each one of Plaintiff's sales of lumber is unique).) However, the record before the Court demonstrates that Plaintiff has been paid for all shipments of lumber that occurred prior to November 23, 2016 as evidenced by Plaintiff's earlier civil suit against Quaker and Plaintiff's proof of claim filed in the Bankruptcy Action. (Lail Defs.' Mot. Dismiss Ex. A ¶ 9, Ex. 1 to Ex. A, Ex. B.) The Lail Defendants sold their Quaker shares and otherwise ceased their involvement with Quaker, except for Gary remaining as an officer, around the time of the stock sale on August 22, 2016—nearly three months before the date of the first invoice for which Plaintiff claims entitlement to payment. (Am. Compl. ¶¶ 10–11, 15.)

43. Therefore, even assuming the Lail Defendants owed and breached a fiduciary duty by continuing to purchase lumber from Plaintiff without disclosing Quaker's financial status, the allegations of the Complaint do not establish that Plaintiff, as a result, suffered a particular, concrete injury.

44. Based on the foregoing, the Court concludes that Plaintiff lacks standing to assert its claims for breach of fiduciary duty and constructive fraud against the Lail Defendants.

### 2. Fraudulent Transfer Claim

45. Plaintiff alleges as a part of its breach of fiduciary duty claim that the Lail Defendants violated the North Carolina Uniform Voidable Transactions Act by fraudulently transferring Quaker's assets to the McNeil Defendants without receiving reasonably equivalent value in an attempt to hinder, delay, or defraud Quaker's creditors. (Am. Compl. ¶¶ 18–22.)

46. "[A]ny transfer that fraudulently or unlawfully deprives all creditors of their right to an insolvent corporation's assets necessarily gives rise to a cause of action shared by those creditors and not unique to any one of them." *Angell*, 336 F. Supp. 2d at 546. Upon reviewing the allegations of the Amended Complaint, the Lail Defendants' alleged misconduct in stripping Quaker of its assets is identical as to all of Quaker's unpaid creditors who experienced the same harm—not receiving payment for goods or services rendered. Because all of Quaker's creditors share an injury based on the Lail Defendants' alleged fraudulent transfers, only Quaker's bankruptcy trustee has standing to assert the creditors' collective claim against the Lail Defendants on behalf of Quaker. *Id.*

47. Accordingly, the Court concludes that Plaintiff lacks standing to assert its fraudulent transfer claim against the Lail Defendants.

### 3. UDTP Claim

48. Plaintiff alleges that the Lail Defendants engaged in unfair and deceptive conduct based on the same factual allegations that Plaintiff alleged in support of its breach of fiduciary duty and constructive fraud claims. (Am. Compl. ¶ 33.) As the

Court has concluded that Plaintiff lacks standing to assert its breach of fiduciary duty and constructive fraud claims because such claims are property of the bankruptcy estate, the Court similarly concludes that Plaintiff lacks a basis for standing as to its UDTP claim.

49. Therefore, the Court concludes that Plaintiff's UDTP claim should be dismissed for lack of subject matter jurisdiction.

## IV.    NOBLE'S MOTION TO DISMISS

50. In her motion to dismiss, Noble not only joins the Lail Defendants' Motion to Dismiss, but also asserts as a separate basis for her motion that Plaintiff's claims against Noble, as Administrator of Clyde's Estate, should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. (Noble's Mot. Dismiss 1, ECF No. 22.)

51. Because the Court concluded that the Lail Defendants' Motion to Dismiss should be granted, the Court further concludes that Noble's Motion to Dismiss should be granted to the extent it joins the Lail Defendants' Motion to Dismiss. Having concluded that the Court lacks subject matter jurisdiction over Plaintiff's claims against the Lail Defendants, including the claims against Clyde's Estate, the Court need not, and does not, reach the merits of the additional arguments raised pursuant to Rule 12(b)(6) in Noble's Motion to Dismiss.

52. As a result, the Court grants Noble's Motion to Dismiss to the extent it is premised on Rule 12(b)(1) and, to the extent it is premised on Rule 12(b)(6), the Court denies the motion as moot.

## V. CONCLUSION

53.     **THEREFORE**, based on the foregoing, the Court hereby **GRANTS** the Lail Defendants' Motion to Dismiss for lack of standing pursuant to Rule 12(b)(1). The Court further **GRANTS in part** Noble's Motion to Dismiss, to the extent it joins the Lail Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), and **DENIES as moot** Noble's Motion to Dismiss pursuant to Rule 12(b)(6).  Accordingly, Plaintiff's claims against the Lail Defendants and against Defendant Noble, in her capacity as Administrator of the Estate of Clyde L. Lail, are dismissed without prejudice.

SO ORDERED, this the 6th day of August, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases