Value Health Sols., Inc. v. Pharm. Research Assocs., 2020 NCBC 41.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

VALUE HEALTH SOLUTIONS
INC. and NAGARAJAN
PARTHASARATHY,

Plaintiffs,

v.

PHARMACEUTICAL
RESEARCH ASSOCIATES, INC.
and PRA HEALTH SCIENCES,
INC.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CV-12318

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT**

THIS MATTER comes before the Court on Defendants Pharmaceutical Research Associates, Inc. ("PRA, Inc.") and PRA Health Sciences, Inc.'s ("PRA Health"; collectively Defendants will be referred to herein as "PRA," in the singular, except as otherwise required) Motion to Dismiss Plaintiffs' Amended Complaint. ("Motion," ECF No. 77.)

THE COURT, having considered the Motion, the briefs submitted in support of and in opposition to the Motion, the arguments of counsel at the hearing on the Motion, the applicable law, and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*Mainsail Lawyers, by David Glen Guidry and Joseph Kellam Warren,
for Plaintiffs Value Health Solutions Inc. and Nagarajan Parthasarathy.*

*Kilpatrick Townsend & Stockton LLP, by Randy Avram, John Moye, and Joe P. Reynolds, for Defendants Pharmaceutical Research Associates, Inc. and PRA Health Sciences, Inc.*

McGuire, Judge.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the complaint that are relevant to the Court's determination of the Motion.  *See, e.g.*, *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  The facts relevant to the determination of the Motion are drawn from the Amended Complaint.  ("Amended Complaint," ECF No. 60.1.)

2.    PRA is a "'contract research organization' or CRO, in the business of providing product development and data solution services primarily to drug companies."  (ECF No. 60.1, at ¶ 1.)  PRA conducts clinical trials for pharmaceutical and biotech companies.

3.    Plaintiff Value Health Solutions Inc. ("VHS") is a developer of clinical trial management software that CROs use to manage clinical trials.  Plaintiff Nagarajan Parthasarathy ("Parthasarathy"; collectively VHS and Parthasarathy are "Plaintiffs") is the founder of VHS.  VHS developed a set of clinical trial management software solutions called ClinTrial Max, Cloud Max, and Info Max (collectively, the "Software Solutions").  The Software Solutions were cloud-based programs designed to help drug companies (or CROs on behalf of drug companies) more efficiently manage the clinical trial process used to develop new drugs.  (*Id.* at ¶ 18.)

4.     In April 2014, PRA contacted Parthasarathy to express interest in acquiring the Software Solutions.  In response, Parthasarathy and VHS provided a day-long demonstration of the software to PRA's IT leadership team consisting of Chuck Piccirillo ("Piccirillo"), a senior VP in development, and Mike Irene, a PRA manager with extensive experience with clinical trial software.  (*Id*. at ¶ 22.) Plaintiffs and PRA then engaged in a year-long period of due diligence and negotiation aimed at PRA's acquisition of the Software Solutions.  (*Id*. at ¶ 24.) VHS discussed licensing the Software Solutions to PRA in exchange for a recurring license payment, rather than selling the Software Solutions for a lump sum amount.  (*Id*. at ¶ 26.)   However, Plaintiffs allege on information and belief that PRA was not interested in licensing the Software Solutions from VHS because: (1) PRA wished to eliminate VHS as a competitor in the marketplace; and (2) prevent VHS from directly licensing the Software Solutions to drug companies or other CROs.  (*Id*. at ¶ 27.)

5.     Between April and October 2014, as part of the due diligence process, VHS provided PRA with full access to the software code and PRA performed testing and analysis to understand the functionality of VHS's Software Solutions from both a technology and business operations perspective.  (*Id*. at ¶¶ 28–29.)  This included a gap analysis by which PRA learned the capabilities of the Software Solutions and identified the functions that PRA wanted to further develop after acquiring the software.  (*Id*.)

6.     On October 15, 2014, PRA Health's Executive Vice President and Chief Financial Officer, Linda Baddour, sent Parthasarathy a Letter of Intent ("LOI").

(ECF No. 5, at Ex. A.)[1]  The LOI outlined PRA's proposal for the acquisition of the

Software Solutions as follows:

  a.  A one-time, up-front payment between $1 million and $3 million;

  b.  Future fixed payments of $333,000 each upon completion of three separate "Integration Milestones," described as (i) "Integrated Salesforce Environments," (ii) "Key Product Enhancements," and (iii) "CTMS Studies Migrated to ClinTrial Max"; and

  c.  Future variable payments associated with "Performance Milestones" associated with "licenses for VHS" Software Solutions as follows:

      i.  a payment of $2.5 million for reaching $25 million in annual sales within two years of closing;

      ii. a payment of $5 million for reaching $50 million in annual sales within three years of closing;

      iii. a payment of $7.5 million for reaching $75 million in annual sales within four years of the closing; and

      iv. a one percent (1%) annual royalty on sales for an additional four years after the $75 million sales amount is reached.

(ECF No. 60.1, at ¶ 32.)

7.  Between October 2014 and May 2015, PRA was, again, given unfettered access to test and analyze the Software Solutions and had ready access to Parthasarathy and other VHS programmers to address questions about the Software Solutions.  PRA had the opportunity to verify all information provided by VHS and

---

[1] The copy of the LOI, attached to the original Complaint, is not signed by VHS, and Plaintiffs do not allege that Plaintiffs agreed to the LOI.

Parthasarathy regarding the Software Solutions. PRA also had the opportunity to analyze whether VHS's Software Solutions had the ability to handle the scale and scope of PRA's intended use for the software. (*Id*. at ¶¶ 36–39.)

8. Effective May 21, 2015, PRA, VHS, and Parthasarathy entered into an Asset Purchase Agreement ("APA") for the purchase of the Software Solutions. (*Id*. at ¶ 40; ECF No. 5, at Ex. B.) Under the APA, PRA agreed to purchase the Software Solutions in exchange for a fixed payment at closing, and fixed and variable milestone payments to be made after closing, as follows:

**Fixed payment at closing:**

(a) Shares of PRA stock valued at $1,957,000.00 (*see* APA, §2.5(b)(i)), plus a payment of $500,000, at closing (*see* APA, § 2.5(b)(ii));

**Fixed payments for software milestones:**

(b) Shares of PRA stock valued at $333,000 for each of the agreed-upon "Milestones":

(i) "integration of the Parties' Salesforce environments," as set forth on Schedule 2.6(a)(i) of the APA, within 18 months of closing ([*see*] APA, § 2.6(a)(i));

(ii) "completion of the key product enhancements" as set forth on Schedule 2.6(a)(ii) of the APA (*see* APA, §2.6(a)(ii)) within 18 months of closing;

(iii) "completion of the migration of the clinical trial management systems studies" of PRA "into ClinTrial Max" as set forth on Schedule 2.6(a)(iii) of the APA (*see* APA, § 2.6(a)(iii));

**Variable payments for sales milestones:**

(c) Payment of $2.5 million for reaching $25 million in External Sales[ ] within 2 years of closing (*see* APA, §2.6(a)(iv));

(d) Payment of $5 million for reaching $50 million in External Sales within 3 years of closing (*see* APA, §2.6(a)(v));

(e) Payment of $7.5 million for reaching $75 million in External Sales within 4 years of closing (*see* APA, §2.6(a)(vi)); and

(f) Payment of an annual royalty equal to one percent (1%) of the annual External Sales for an additional four years after reaching $75 million in External Sales (*see* APA, §2.6(a)(vii)).

(ECF No. 60.1, at ¶ 42.)

9. The APA defines an "External Sale" as "the sale of one or more licenses to the [Software] Solutions by [PRA] or one of its Affiliates to a third party which is not (i) an Affiliate of [PRA] or (ii) using such license(s) in connection with providing services to [PRA] and/or any of its Affiliates." (*Id*. at ¶ 44.)

10. Plaintiffs contend that PRA fraudulently and negligently induced Plaintiffs to enter the APA and sell the Software Solutions for far below its actual value through a calculated course of false representations and concealments of material fact regarding PRA's intent to permit Plaintiffs to earn the milestone payments. Plaintiffs allege that

> [w]hile negotiating the transaction, PRA induced VHS . . . to accept the APA purchase price structure through misrepresentations that reasonably led Mr. Parthasarathy and VHS to believe that PRA would attempt to achieve the milestones outlined in the APA and provide VHS and Mr. Parthasarathy with a fair and reasonable opportunity to earn the additional consideration agreed to by the parties. As a result, Mr. Parthasarathy and VHS proceeded with

the transaction, including Mr. Parthasarathy becoming an employee of PRA, reasonably accepting as true PRA's representations and promises about its business, existing software platform, allocation of adequate resources, and good faith efforts toward achieving the milestones.

(*Id.* at ¶ 5.) Plaintiffs further allege that "[t]o the extent PRA's misstatements and omissions before the transaction were intentionally made, . . . PRA never intended (a) to pay the additional consideration offered in the APA, (b) to honor all promises made in the APA, or (c) to provide the platform, resources, and efforts reasonably necessary to do so." (*Id.* at ¶ 8.)

11.     Plaintiffs also allege that

> [w]hen signing the APA, Mr. Parthasarathy and VHS reasonably relied on PRA's false assurances and representations that PRA would provide them with a fair and reasonable opportunity to receive the milestone payments. PRA, however, never intended for VHS and Mr. Parthasarathy to receive the milestone payments outlined in the LOI and APA and concealed material information about its actual planned strategy [for] using VHS's Software Solutions.

(*Id.* at ¶¶ 50–51.)

12.     Finally, Plaintiffs allege that

> [b]y inducing VHS and Mr. Parthasarathy to enter into the transaction with the purchase price structured such that the bulk of consideration to be paid for the Software Solutions was in the form of post-closing milestone payments that PRA never intended to pay, PRA stood to realize substantial financial benefit, namely they were able to purchase VHS's Software Solutions for far less than they would have been able to had PRA revealed its true intentions and strategy.

(*Id.* at ¶ 53.)

13.     In conjunction with the APA, PRA hired Parthasarathy as a Vice President of PRA, Inc., ostensibly to oversee the further development of the Software Solutions and the integration of the software into PRA's clinical trial platforms. (ECF No. 60.1, at ¶¶ 5, 67, 78, 125; ECF No. 5, at Ex. C.)  PRA terminated Parthasarathy's employment in December 2017.  (ECF No. 60.1, at ¶ 125.)

14.     Plaintiffs allege that following the execution of the APA and during Parthasarathy's employment, PRA:

    a.  met the integration software milestone in § 2.6(a)(i) of the APA and that "PRA has breached the APA by failing to timely make the payment owed under Section 2.6(a)(i) of the APA."  (*Id*. at ¶¶ 54–58);

    b.  "imposed additional or different specifications from those outlined in the APA" and interfered with and delayed implementation of the "key product enhancements" software milestone in § 2.6(a)(ii) of the APA.  Accordingly, the milestone should be "deemed completed" and PRA "breached the APA by failing to timely make the payment owed under Section 2.6(a)(ii) of the APA."  (*Id*. at ¶¶ 59–63);

    c.  imposed additional conditions on completion of the third software milestone and "refused to make good faith efforts to timely complete the third software milestone."  (*Id*. at ¶¶ 71–75);

    d.  "require[d] completion of all three software milestones before PRA would   undertake   efforts   to   sell   or   license   .   .   .   [the]

Software Solutions[ ] as a standalone product" in violation of the express terms of the APA. (*Id.* at ¶¶ 64–70);

e. repeatedly changed Parthasarathy's job duties and reorganized his department to interfere with completion of the software and sales milestones in the APA. (*Id.* at ¶¶ 78–83); and

f. diverted significant assets and its information technology resources to developing software other than the Software Solutions, thereby delaying completion of the APA milestones. (*Id.* at ¶¶ 84–88).

15. Plaintiffs allege that "PRA solely controlled completion of the software and sales milestones outlined in the APA," including "the allocation of financial and IT resources, assignment of management authority and responsibility, [and] the timeline and development of . . . and the decision to market [the Software Solutions] for sale or licensing." (*Id.* at ¶¶ 89–90.) Plaintiffs further allege that PRA delayed and interfered with the development of the Software Solutions with the intent "to deprive . . . [Plaintiffs] of a fair and reasonable opportunity of receiving the fixed and variable milestone payments." (*Id.* at ¶¶ 91–92.) Finally, Plaintiffs allege that "PRA [ ] did not act reasonably and in good faith in pursuing external sales under the APA and . . . PRA never intended to make the sales milestone payment[s] in the APA." (*Id.* at ¶ 93.)

16. Plaintiffs also allege that, during Parthasarathy's employment, PRA "falsely promis[ed] to amend the APA and extend the milestone deadlines." (*Id.* at ¶¶ 104–05.) "[L]ate in 2016 and through 2017, PRA made representations to Mr.

Parthasarathy that induced him to believe that PRA intended to amend the payment milestone timelines to align with the actual status and realistic target date of the software development in light of PRA's diversion of company resources to other projects." (*Id.* at ¶ 109.) More particularly, Plaintiffs allege as follows:

> On or around February 8, 2017, PRA's CEO, Colin Shannon ["Shannon"], sent an email to Mr. Parthasarathy that PRA was "obviously trying to get [VHS and/or Mr. Parthasarathy] a contract" to address the milestone timeline issue.

> In or around May 2017, [Parthasarathy's supervisor] Ms. Jones-Hertzog represented to Mr. Parthasarathy that she had proposed a revised timeline internally and was awaiting approval. Mr. Parthasarathy subsequently followed-up with various PRA representatives, including Mr. Shannon, and Ms. Jones-Hertzog, to finalize any such revised milestones, but he did not receive a meaningful response.

(*Id.* at ¶¶ 116–17.)

17. Plaintiffs allege that "[d]espite making these statements and promises, PRA did not intend to amend the APA or extend the milestone deadlines." (*Id.* at ¶¶ 105, 124 ("PRA, however, did not intend to complete the milestones, [or] amend the terms of the APA to extend the time for it to do so.").) Plaintiffs allege Parthasarathy continued his employment with PRA and provided PRA with additional assistance in developing the Software Solutions based on PRA's misrepresentations. (*Id.* at ¶¶ 115, 120.)

18. Plaintiffs also assert that PRA's course of conduct during Parthasarathy's employment, and particularly its misrepresentations that PRA

would amend the milestone deadlines, was an inequitable assertion of PRA's power and authority over Parthasarathy. (*Id.* at ¶¶ 92, 104, 110, 111, 115.)

19. Finally, in or around September 2016, PRA entered into a Master Services Agreement to provide services to Takeda Pharmaceuticals. Plaintiffs allege that this transaction qualifies as an "External Sale" under the APA, but that PRA has not made the required sales milestone payments to Plaintiffs resulting from the agreement. (*Id.* at ¶¶ 96–101.) Plaintiffs believe PRA has entered into similar agreements with other customers that also would qualify as External Sales, and that PRA is obligated to make sales milestone payments on those agreements as well. (*Id.* at ¶ 102.)

20. Plaintiffs filed the Complaint in this matter on October 5, 2018. (ECF No. 5.) On November 15, 2018, this case was designated a mandatory complex business case and assigned to the undersigned. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

21. On November 1, 2019, the Court granted leave for Plaintiffs to file an Amended Complaint. (Or. on Pls.' Mot. to Am. Compl., ECF No. 74.) In the Amended Complaint, Plaintiffs allege claims against PRA for: breach of contract (First Cause of Action); intentional misrepresentation (Second Cause of Action); negligent misrepresentation (Third Cause of Action); fraudulent inducement (Fourth Cause of Action); violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 ("UDTPA") (mislabeled as the Sixth Cause of Action); promissory

estoppel (mislabeled as the Seventh Cause of Action); and unjust enrichment (mislabeled as the Eighth Cause of Action). (ECF No. 60.1, at ¶¶ 129–195.)

22. On December 2, 2019, Defendants filed the Motion and a brief in support (Br. in Supp., ECF No. 78), seeking the dismissal of all of Plaintiffs' claims except for the breach of contract claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rules"). On January 23, 2020, Plaintiffs filed a response brief in opposition to the Motion (Br. in Opp., ECF No. 91), and Defendants filed their reply brief on February 3, 2020 (Reply Br., ECF No. 96).

23. On March 17, 2020, the Court held a hearing via video conference on the Motion, which is now ripe for resolution.

## II. ANALYSIS

24. Defendants seek dismissal of Plaintiffs' claims for intentional misrepresentation (fraud), negligent misrepresentation, fraudulent inducement, violation of the UDTPA (hereinafter "UDTPA claim"), promissory estoppel, and unjust enrichment under Rule 12(b)(6). (ECF No. 77, at p. 1.)

25. Dismissal pursuant to Rule 12(b)(6) is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018). The Court, in deciding a Rule 12(b)(6) motion, construes the claims liberally, accepting all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862

(2009). The facts and permissible inferences set forth in the claims are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

26. In deciding a motion to dismiss under Rule 12, the Court also may consider documents which are the subject of the plaintiff's complaint and to which the complaint specifically refers, including the contract that forms the subject matter of the action. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). A "trial court can reject allegations [in the pleadings] that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862.

27. Applying these standards, the Court will first address Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement, followed by the claim for negligent misrepresentation, the UDTPA claim, the claim for promissory estoppel, and finally the claim for unjust enrichment.

A. *Intentional Misrepresentation (Fraud) and Fraudulent Inducement*

28. "[T]he following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130,

138, 209 S.E.2d 494, 500 (1974); *Ward v. Fogel*, 237 N.C. App. 570, 581, 768 S.E.2d 292, 301 (2014). The elements of fraud in the inducement are identical. *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009) (citing *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.,* 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992)).

29. Rule 9(b) requires that allegations of fraud be stated with particularity. N.C.G.S. § 1A-1, Rule 9(b). To satisfy the particularity requirement, Plaintiffs must allege (1) "the time, place and content" of the representation, (2) the "identity of the person making the representation" and (3) "what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). The representations must be "definite and specific"—more than "mere puffing, guesses, or assertions of opinions," but actual representations of material facts. *Rowan Cnty. Bd. of Educ.*, 332 N.C. at 17, 418 S.E.2d at 659; *see also Ragsdale*, 286 N.C. at 139, 209 S.E.2d at 500 ("A subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects, must be misrepresented.").

30. PRA contends that Plaintiffs' claims for fraud and fraudulent inducement are based on the same three categories of alleged "misrepresentations" made by PRA that: (1) PRA would work to timely complete the milestones; (2) PRA would give Plaintiffs a "reasonable opportunity" to complete the software and sales milestones; and (3) PRA would modify or postpone the milestone deadlines. (ECF No. 78, at pp. 3–4, 8.) With regard to the first two categories of misrepresentations (the

"pre-APA misrepresentations"), PRA contends that the fraud claims should be dismissed pursuant to Rule 9(b) because the Amended Complaint simply alleges that "PRA" made the false representations, but does not allege the time, place, or specific individual who made the misrepresentation nor any specific statements allegedly constituting the misrepresentation. (*Id.* at pp. 8–9.)

31.    In response, Plaintiffs argue that the allegations that PRA executives Shannon and Piccirillo were involved in the fourteen-month period of negotiations and due diligence leading to the execution of the APA provides sufficient particularity to satisfy the particularity requirements of Rule 9(b).  (ECF No. 91, at pp. 15–16.) The Court disagrees.    Plaintiffs do not attribute any specific pre-APA misrepresentation to Shannon or Piccirillo, let alone provide the date and location of the misrepresentation.  Instead, in the Amended Complaint, which was filed over a year after this action was initiated and after many months of discovery, Plaintiffs allege only broad categories of pre-APA misrepresentations made by undisclosed individuals at unknown times.  Accordingly, to the extent the Motion seeks dismissal of Plaintiffs' claims for fraud and fraudulent inducement based on alleged pre-APA misrepresentations made by Shannon and Piccirillo, the Motion should be GRANTED.

32.    Plaintiffs also argue that the LOI "provides written evidence of PRA's fraudulent representations and material omissions relating to software sales." (ECF No. 91, at p. 4.) Plaintiffs contend that the LOI contained statements regarding the incentive payments as follows:

Under the heading of Performance Milestones, PRA's Letter of Intent outlines three annual revenue thresholds for the software sales milestone. After each one, PRA states that:

- "The ability to earn this consideration will last for the first 2 full fiscal years following the closing date."

- "The ability to earn this consideration will last for the first 3 full fiscal years following the closing date."

- "The ability to earn this consideration will last for the first 4 full fiscal years following the closing date."

As a "statement of the intentions" of PRA "with respect to a potential Transaction," these representations were knowingly and intentionally false. PRA knew that VHS would not be able to earn this sales-based consideration over the full time period stated, if at all, because PRA intended to block and prevent software sales for at least eighteen months after closing while the software was being integrated and enhanced by PRA. . . . The LOI omitted this material fact.

(*Id.* at pp. 4–5 (emphasis and citations omitted).) Plaintiffs argue that the LOI contains fraudulent statements and omissions that satisfy the particularity requirements of Rule 9(b) and can sustain their claims for fraud based on pre-APA misrepresentations. (*Id.* at p. 15.)

33. PRA argues that Plaintiffs' reliance on the LOI as the basis for their fraud claims is "a new theory of fraud—one not [pleaded] in the Amended Complaint." (ECF No. 96, at p. 2.) PRA contends that Plaintiffs cannot amend the Amended Complaint by asserting a new theory of liability in response to a motion to dismiss. (*Id.* (citing *In re Southeastern Eye Center-Pending Matters*, 2019 NCBC LEXIS 29, at *49 (N.C. Super. Ct. May 7, 2019) (plaintiff could not survive summary judgment by

asserting fraud claim not alleged with particularity in its complaint in response to motion). PRA further contends that Plaintiffs' claim for fraud, based on PRA's alleged omission of material facts from the LOI, as opposed to the alleged affirmative misrepresentations, cannot survive because Plaintiffs have not alleged that PRA had a duty to disclose any information. (ECF No. 96, at p. 5.)

34. Preliminarily, the Court notes that PRA has not argued, and the Court does not consider at this time, whether representations contained within a letter of intent executed between two businesses as part of arm-length negotiations can form the basis for a claim for fraud or negligent misrepresentation. The Court has serious questions about the viability of such a claim under North Carolina law, and PRA is not prohibited from making such an argument at another appropriate time in this case. Nevertheless, the Court addresses the arguments that PRA does raise.

35. Regarding the argument that Plaintiffs' reliance on the LOI as a basis for the fraud claims is a new theory, in the Amended Complaint, Plaintiffs expressly allege that PRA provided the LOI and Plaintiffs attached the LOI to the original complaint. (ECF No. 60.1, at ¶¶ 30–32.) Plaintiffs also allege parts of the express terms of the LOI regarding the proposed software milestone payments and Plaintiffs' opportunity to earn the sales incentives which Plaintiffs claim were fraudulent. (*Id.* at ¶ 32.) The allegations generally support Plaintiffs' position that the terms of the LOI were part of the fraudulent misrepresentations made to Plaintiffs. Under the circumstances, the Court concludes that Plaintiffs' reliance on the representations in

the LOI in support of their fraud claims is adequately raised in the Amended Complaint.

36. In addition, the time, date, author, and contents of the LOI are alleged particularly. The Court concludes that Plaintiffs' allegations about the affirmative representations made in the LOI, generously read, are particular enough to survive dismissal under Rule 9(b).

37. On the other hand, Plaintiffs' argument regarding the alleged fraudulent "omissions" from the LOI lacks merit. The allegations about the LOI in the Amended Complaint make no reference to "omissions" from the LOI. (ECF No. 60.1, at ¶¶ 30–35.) In addition, in setting out their causes of action for fraud and fraudulent inducement, Plaintiffs do not allege any fraud based on omissions. (*Id*. at ¶¶ 134–46, 157–70.) The Amended Complaint does not allege a claim for fraud based on omissions of material fact from the LOI.

38. Therefore, to the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on alleged affirmative misrepresentations contained in the LOI, the Motion should be DENIED. However, to the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on alleged omissions from the LOI, the Motion should be GRANTED.

39. With regard to the representations made after execution of the APA and while Parthasarathy was employed with PRA that PRA would modify the milestone deadlines in the APA (the "post-APA misrepresentations"), PRA argues that

"Plaintiffs again fail to set forth the time, place, or specific individuals who purportedly made a 'false promise that PRA would modify or postpone the milestone deadlines and not deprive VHS and Mr. Parthasarathy of the promised milestone payments.'" (ECF No. 78, at p. 9.) While PRA concedes that Plaintiffs allege specific statements made by Shannon and Jones-Hertzog to Parthasarathy about potential modification of the APA, it contends that the representations are merely statements of opinion or otherwise are not actionable fraudulent statements. (*Id*. at p. 10.)

40.    Plaintiffs allege that "[o]n or around February 8, 2017, PRA's CEO, Colin Shannon, sent an email to Mr. Parthasarathy that PRA was 'obviously trying to get [VHS and/or Mr. Parthasarathy] a contract' to address the milestone timeline issue" and "[i]n or around May 2017, Ms. Jones-Hertzog represented to Mr. Parthasarathy that she had proposed a revised timeline internally and was awaiting approval." (ECF No. 60.1, at ¶¶ 116–17.) Plaintiffs further allege that despite these representations "PRA [ ] did not intend to . . . amend the terms of the APA to extend the time for it to do so" (*Id*. at ¶ 124) and "knew its representations to be false when it made them" (*Id*. at ¶ 143). Plaintiffs also allege that Parthasarathy relied on the misrepresentations that PRA would modify the milestones to continue assisting PRA with development of the Software Solutions. (*Id*. at ¶¶ 115, 120.) Plaintiffs do not identify any other individuals who made specific statements or representations about PRA's intent to modify the APA.

41.    The Court concludes that the allegations regarding the statements made by Shannon and Jones-Hertzog are minimally sufficient to survive a motion to

dismiss. First, they are particular as to the time and content of the statements and identify the speakers. Second, to the extent Plaintiffs allege that at the time Shannon and Jones-Hertzog made their respective statements, PRA was, in fact, not "trying to get" Plaintiffs a modified contract, and Jones-Hertzog had not "proposed a revised timeline" for achievement of the milestones, the Court is constrained to view those statements as statements of fact, and not opinions.

42. Therefore, to the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on the alleged post-APA misrepresentations by Shannon and Jones-Hertzog about PRA's intent to modify the APA, the Motion should be DENIED. However, to the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on any other alleged post-APA misrepresentations about PRA's intent to modify the APA, the Motion should be GRANTED.

B. *Negligent Misrepresentation*

43. In its brief in support of the Motion, PRA argues that Plaintiffs' claim for negligent misrepresentation is based on the same three categories of alleged "misrepresentations" made by PRA upon which Plaintiffs' fraud claims are based and that the allegations in support of negligent misrepresentation should be dismissed because they do not meet the Rule 9(b) particularity requirement. (ECF No. 78, at pp. 3–4, 7–9.)

44. Plaintiffs respond that their negligent misrepresentation claim is not based on the same alleged misrepresentations that support the fraud claims. (ECF

No. 91, at pp. 8–9.) Instead, Plaintiffs contend that their "claim for negligent misrepresentations, [ ] *is legally and factually distinct from fraud and rests on a different set of representations than those alleged as fraudulent.*" (*Id.* (emphasis added).) Specifically, Plaintiffs contend as follows:

> VHS's claim for negligent misrepresentation arises from PRA's misstatements concerning the technical requirements for integrating and enhancing the software on PRA's Predictivv platform, a set of inaccurate statements stemming from PRA's lack of ordinary care during the due diligence process. *See* Am. Compl., ¶¶ 28, 29, 69, 149, and 150. As a result of PRA's carelessness, PRA devised and imposed technical requirements that were wrong, had to be changed, substituted, or disregarded, and interfered with completion of the software milestones. *See id.* By contrast, VHS's claims of fraud stem from PRA's knowingly false misrepresentations and material omissions related to conditioning software sales vis-à-vis the completion of technical development, as evident in the Letter of Intent, among other communications.

(*Id.* at pp. 10–11.) Plaintiffs also argue that the particularity required under Rule 9(b) does not apply to a claim for negligent misrepresentation and that they have adequately pleaded a claim for negligent misrepresentation to survive dismissal. (*Id.* at pp. 9–11.)

45. PRA responds by arguing that, again, Plaintiffs are attempting to state a new theory not alleged in the Amended Complaint. (ECF No. 96, at pp. 7–8.) PRA contends that Plaintiffs do not make any allegations in the Amended Complaint about misrepresentations "aris[ing] from PRA's misstatements concerning the technical requirements for integrating and enhancing the software on PRA's Predictivv platform" that would support such a theory. (*Id.* at p. 7.)

46.    Under North Carolina law,

> "[n]egligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). Reliance is not justifiable for purposes of negligent misrepresentation if a plaintiff failed to make reasonable inquiry, had the opportunity to investigate, and could "have learned the true facts through reasonable diligence[.]" *Rountree v. Chowan County*, 252 N.C. App. 155, [162,] 796 S.E.2d 827, 832 (2017).

*BDM Invs. v. Lenhil, Inc.*, 826 S.E.2d 746, 761 (2019).

47.    The Court begins with a review of the allegations upon which Plaintiffs rely in arguing that they state a cause of action for negligent misrepresentation. Paragraphs 28 and 29 of the Amended Complaint merely allege that during the due diligence period, PRA had access to and extensively tested the Software Solutions. (ECF No. 60.1, at ¶¶ 28–29.)  Paragraph 69 alleges that *after* the APA was executed, PRA contended that "the Software Solutions did not 'meet PRA spec yet'—an amorphous, ever-changing, undisclosed set of additional or different milestone requirements than those outlined in the APA." (*Id*. at ¶ 69.)  Paragraphs 28, 29, and 69 do not contain any allegation that PRA made "misstatements concerning the technical requirements for integrating and enhancing the software on PRA's Predictivv platform" as Plaintiffs argue. (ECF No. 91, at p. 10.)

48.    Paragraphs 149 and 150 of the Amended Complaint contain allegations regarding the Predictivv platform, but neither alleges that PRA made misstatements or misrepresentations about the technical requirements needed to integrate the Software Solutions into Predictivv.  Rather, Plaintiffs allege that "PRA failed to

exercise care and competence in obtaining and communicating the information it supplied to Mr. Parthasarathy and VHS regarding the *timeline and development of Predictivv* and *the impact it would have on PRA's business* and the timely completion of the milestones . . . [and] [t]he information provided by PRA was false or inaccurate and PRA knew or should have known that . . . *Predictivv would interfere and prevent the completion of the software and sales milestones.*" (ECF 60.1, at ¶¶ 149–150 (emphasis added).) These allegations arguably support Plaintiffs' theory that PRA did not devote adequate assets and resources to helping Plaintiffs develop the Software Solutions and meet the milestones. However, these allegations do not support the contention that PRA provided incorrect technical specifications to Plaintiffs regarding the integration of the Software Solutions into Predictivv. Plaintiffs cannot amend the Amended Complaint to raise a new theory in their brief in opposition to the Motion. *In re Southeastern Eye Center*, 2019 NCBC LEXIS 29, at *49.

49. In addition, despite Plaintiffs' argument to the contrary, this Court and North Carolina's federal district courts have consistently held that plaintiffs are required to plead claims for negligent misrepresentation with the particularity required by Rule 9(b). *See, e.g.*, *Aldridge v. Metro. Life Ins. Co.,* 2019 NCBC LEXIS 116, at *113 (N.C. Super. Ct. Dec. 31, 2019); *Beam v. Sunset Fin. Servs.*, 2019 NCBC LEXIS 56, at *18 (N.C. Super. Ct. Sept. 3, 2019); *Rabinowitz v. Suvillaga,* 2019 NCBC LEXIS 8, at *33 (N.C. Super. Ct. Jan. 28, 2019); *Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, 2018 NCBC LEXIS 101, at *57 (N.C. Super. Ct. Sept. 28, 2018);

*Herrera v. Charlotte Sch. of Law, LLC,* 2018 NCBC LEXIS 35, at *36 (N.C. Super. Ct. Apr. 20, 2018); *Bucci v. Burns,* 2017 NCBC LEXIS 83, at *7–8 (N.C. Super. Ct. Sept. 14, 2017); *Deluca v. River Bluff Holdings II, LLC,* 2015 NCBC LEXIS 12, at *20 (N.C. Super. Ct. Jan. 28, 2015); *Al-Jamal v. Michael Baker Corp.,* No. 5:12-CV-746-F, 2013 U.S. Dist. LEXIS 93676, at *18 (E.D.N.C. July 3, 2013) ("Plaintiff is cautioned that any negligent misrepresentation claim must satisfy Rule 9(b)'s pleading requirements."); *Rohlik v. I-Flow Corp.,* No. 7:10-CV-173-FL, 2011 U.S. Dist. LEXIS 73454, at *6 (E.D.N.C. July 7, 2011) ("[C]laims of negligent misrepresentation [also] fall within the purview of Rule 9(b)."); *Suntrust Mortg., Inc. v. Busby,* 651 F. Supp. 2d 472, 485 (W.D.N.C. 2009) (applying Rule 9(b) to negligent misrepresentation and fraud claims); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.,* 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) (same); *Angell v. Kelly,* 336 F. Supp. 2d 540, 549 (M.D.N.C. 2004) (same); *Breeden v. Richmond Cmty. Coll.,* 171 F.R.D. 189, 199 (M.D.N.C. 1997) (After noting a split among federal courts as to whether Rule 9(b) applies to claims for negligent misrepresentation, adopting the "approach that negligent misrepresentation [ ] claims come within Rule 9(b)."). In this case, Plaintiffs have not alleged the time, place, speaker, nor the specific contents of, any alleged misstatement of technical requirements for integrating and enhancing the software by PRA.

50. Therefore, to the extent the Motion seeks dismissal of Plaintiffs' claim for negligent misrepresentation, the Motion should be GRANTED.

C. *UDTPA*

51. PRA seeks dismissal of the UDTPA claim. PRA first contends that Plaintiffs' UDTPA claim is also a "fraud-based claim," and that dismissal of Plaintiffs' fraud and negligent misrepresentation claims for failure to meet the requirements of Rule 9(b) warrants dismissal of the UDTPA claim. (ECF No. 78, at pp. 3, 11.) PRA further argues that to the extent the UDTPA claim is grounded in PRA's alleged breach of the APA, it must fail because a mere breach of contract cannot sustain a claim for violation of the UDTPA. (*Id.* at pp. 11–12.) Finally, PRA argues that Plaintiffs' allegations of PRA's inequitable assertion of power over Parthasarathy cannot support the UDTPA claim because they arise out of an employer-employee relationship. (*Id.* at p. 12.)

52. Plaintiffs argue that their UDTPA claim "rests on allegations of negligent misrepresentations, unfair conduct, and aggravating circumstances—arising between business competitors, not in an employer-employee relationship—all distinct from fraud, and none of which trigger the heightened pleading requirements of Rule 9(b)." (ECF No. 91, at p. 9.) Plaintiffs contend that the UDTPA claim "validly rests on allegations other than fraud, including:

- Negligent misrepresentations, as already described above. *See* Am. Compl., ¶¶ 28, 29, 69, 149, and 150.

- Breach of the Asset Purchase Agreement with aggravating circumstances. *See* Am. Compl., ¶¶ 52, 175 (bullets 3 and 4); and

- Unfair conduct based on PRA's inequitable assertion of power over VHS and Mr. Parthasarathy. *See* Am. Compl., ¶¶ 6, 52, 75-76, 77-84, 89-92, 110, 139, 140, 169, 175 (bullets 3 and 4).

(*Id.* at pp. 11–12.)

53. Plaintiffs further contend that the existence of an employer-employee relationship between PRA and Parthasarathy does not necessarily defeat a UDTPA claim, and would not in this case since VHS also makes the UDTPA claim and was not an employee of PRA. (*Id.* at pp. 12–14.)

54. The Court has thoroughly reviewed the allegations in the Amended Complaint, the arguments made by the parties, and the applicable law and concludes that PRA has not sustained its burden of demonstrating grounds for dismissal under Rule 12(b)(6). First, to the extent a cause of action for fraud can support a UDTPA claim, the Court has not dismissed all of Plaintiffs' fraud allegations in this case. Second, a claim for violation of the UDTPA does not require a separate, actionable, underlying claim for fraud. *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) ("This Court has held that 'it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception,' but 'plaintiff must . . . show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception [to support a UDTPA claim].'") (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981)). While some of Plaintiffs' fraud claims based on pre-APA misrepresentations have been dismissed pursuant to Rule 9(b), Plaintiffs allege conduct by PRA in procuring Plaintiffs' execution of the APA, which could constitute deceptive acts.

55. Furthermore, while Plaintiffs' allegations that PRA deliberately interfered with and prevented Plaintiffs from achieving the software and sales

milestones may prove very difficult to establish, that conduct could arguably support the presence of substantial aggravating circumstances surrounding breach of the APA. Finally, "the mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001). Here, Plaintiffs allege that PRA hired Parthasarathy as part of the overall transaction surrounding the APA and allege that Parthasarathy continued to act as VHS's agent following the execution of the APA. (ECF No. 60.1, at ¶¶ 106–08.)

56. In summary, the gravamen of the Amended Complaint is that PRA engaged in intentionally deceptive conduct in order to acquire the Software Solutions without paying fair compensation by engaging in sham negotiations and agreeing to terms that PRA never intended to honor, and then intentionally prevented Plaintiffs from achieving additional incentive compensation by deliberately interfering with Plaintiffs' efforts to achieve milestones. The Court concludes that while it is likely Plaintiffs will have difficulty proving these extraordinary allegations, Plaintiffs sufficiently allege potentially actionable deceptive and unfair conduct by PRA in negotiating the APA and in carrying out its terms to support the UDTPA claim.

57. Therefore, to the extent the Motion seeks dismissal of Plaintiffs' UDTPA claim, the Motion should be DENIED.

### D. *Promissory Estoppel*

58. Plaintiffs attempt to make a claim for "promissory estoppel." (ECF No. 60.1, at ¶¶ 179–87.) Plaintiffs allege that "PRA should have reasonably expected its

promises to VHS and Mr. Parthasarathy" in the APA and in Parthasarathy's employment agreement, and the representations that PRA would amend the milestones in the APA "to induce action or forbearance by" Plaintiffs. (*Id*. at ¶¶ 180–84.) Plaintiffs allege that they "relied to their detriment on PRA's promises" in entering into the APA and employment agreement and in performing services for PRA. (*Id*. at ¶¶ 182, 185.) Plaintiffs claim that "PRA is estopped from denying its promises" and is required to fulfill them. (*Id*. at ¶ 186.)

59.     PRA moves to dismiss the claim for promissory estoppel on the grounds that North Carolina has not recognized an affirmative cause of action for promissory estoppel. (ECF No. 78, at p. 13.) Plaintiffs appear to concede that no North Carolina case has recognized a cause of action for promissory estoppel, but argue that the Court should do so in this action. (ECF No. 91, at pp. 16–19.)

60.     The Court agrees with PRA. *See, e.g.*, *Herring v. Volume Merchandise, Inc.*, 252 N.C. 450, 453, 113 S.E.2d 814, 816 (1960) ("[E]stoppels are protective only, and are to be invoked as shields, and not as offensive weapons."); *Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987), *aff'd*, 322 N.C. 107, 366 S.E.2d 441 (1988) (per curiam) ("North Carolina case law has not approved the doctrine [of estoppel] for affirmative relief."); *Krawiec v. Manly*, 2016 NCBC LEXIS 7, at *12 (N.C. Super. Ct. Jan. 22, 2016) ("[T]he doctrine of equitable estoppel is not a basis for an affirmative claim for relief. Rather, the doctrine provides a defense to bar enforcement of opposing claims or affirmative defenses.") (citation and quotation marks omitted);

*Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, 2018 NCBC LEXIS 7, at \*16–17 (N.C. Super. Ct. Jan. 24, 2018) (same); *Laschkewitsch v. Legal & General America, Inc.*, 247 F. Supp. 3d 710, 721 (E.D.N.C. 2017) ("North Carolina courts, however, do not recognize estoppel as an affirmative cause of action.").

61.     In the absence of any precedent for permitting a plaintiff to raise promissory estoppel as an affirmative claim for relief, the Court declines to recognize such a claim under the allegations in this lawsuit.  Therefore, to the extent the Motion seeks dismissal of Plaintiffs' claim for promissory estoppel, the Motion should be GRANTED.

E.     *Unjust Enrichment*

62.     Plaintiffs attempt to make a claim for unjust enrichment by alleging "Parthasarathy and VHS conferred a number of valuable benefits to PRA including (i) transferring ownership and control of the Software Solutions, (ii) halting their competitive development and marketing activities and agreeing to competitive restrictions, and (iii) providing time and effort to PRA's business and software development efforts."  (ECF No. 60.1, at ¶ 189.)  Plaintiffs further allege "[t]he benefits conferred by VHS and [ ] Parthasarathy were separate and distinct from those conferred under the terms of the APA, and . . . PRA has an enforceable obligation, in addition to the APA or in the event it is unenforceable in some relevant respect, to account to VHS and [ ] Parthasarathy for the benefits it received."  (*Id.* at ¶¶ 193–94.)

63. PRA argues that Plaintiffs' claim for unjust enrichment should be dismissed because Plaintiffs allege in the Amended Complaint that "[t]he APA is a valid contract between the parties" (ECF No. 60.1, at ¶ 130),[2] and a claim for unjust enrichment cannot exist where there is a valid express contract covering the same subject matter. (ECF No. 78, at pp. 13–15.)

64. In response, Plaintiffs simply argue that the Court should treat the claim for unjust enrichment as having been pleaded in the alternative "in the event[ ] that the [APA] or any portion or provision of it . . . fails, or cannot be enforced." (ECF No. 91, at p. 20.)

65. The Court finds PRA's argument persuasive. "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Krawiec*, 370 N.C. 602, 615, 811 S.E.2d 542, 551 (2018) (citations omitted). "The claim is not based on a promise but is imposed by law to prevent an unjust enrichment." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). However, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Id.* In this case, the APA provides the terms of the relationship between Plaintiffs and PRA. Plaintiffs allege that the APA is a valid, express contract between the parties, which covers the alleged damages Plaintiffs seek through the claim for unjust enrichment.

---

[2] PRA admits Plaintiffs' allegation that the APA is a valid contract between the parties and has not raised an affirmative defense challenging the validity of the APA. (Answer, ECF No. 76, at ¶ 130.)

66.     Therefore, to the extent the Motion seeks dismissal of Plaintiffs' claim for unjust enrichment, the Motion should be GRANTED.

## III.     CONCLUSION

THEREFORE, IT IS ORDERED that the Motion is GRANTED, in part, and DENIED, in part, as follows:

1.     To the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on alleged pre-APA misrepresentations made by Shannon and Piccirillo, the Motion is GRANTED.

2.     To the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on alleged omissions from the LOI, the Motion is GRANTED.

3.     To the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on the alleged post-APA misrepresentations by Shannon and Jones-Hertzog about PRA's intent to modify the APA, the Motion is DENIED. However, to the extent the Motion seeks dismissal of Plaintiffs' claims for intentional misrepresentation (fraud) and fraudulent inducement based on any other alleged post-APA misrepresentations about PRA's intent to modify the APA, the Motion is GRANTED.

4.     To the extent the Motion seeks dismissal of Plaintiffs' claim for negligent misrepresentation, the Motion is GRANTED.

5. To the extent the Motion seeks dismissal of Plaintiffs' UDTPA claim, the Motion is DENIED.

6. To the extent the Motion seeks dismissal of Plaintiffs' claim for promissory estoppel, the Motion is GRANTED.

7. To the extent the Motion seeks dismissal of Plaintiffs' claim for unjust enrichment, the Motion is GRANTED.


SO ORDERED, this the 22nd day of May, 2020.


                    /s/ Gregory P. McGuire

                    Gregory P. McGuire
                    Special Superior Court Judge for
                    Complex Business Cases